UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| HELEN ABRAHAM and NATOYA KERDEANE SYLVESTER, on behalf of themselves, individually, and on behalf of all others similarly-situated,<br><br><div align="center">Plaintiffs,</div><br><div align="center">-against-</div><br>PROMISE HOME CARE AGENCY, INC.,<br><br><div align="center">Defendant.</div> | **Docket No.:**<br>**1:18-cv-4502 (GWG)** |

<div align="center">

## JOINT STIPULATION OF COLLECTIVE AND CLASS ACTION SETTLEMENT AND RELEASE

</div>

This Joint Stipulation of Collective and Class Action Settlement and Release is entered into by and between Named Plaintiffs Helen Abraham and Natoya Kerdeane Sylvester ("Named Plaintiffs"), on behalf of themselves, individually, and on behalf of the conditionally-certified collective and putative class of similarly-situated individuals whom they seek to represent, on the one hand, and Defendant PROMISE HOME CARE AGENCY, INC., ("Defendant") (Defendant, together with Named Plaintiffs, as "the Parties"), on the other hand.

<div align="center">

### RECITALS

</div>

**WHEREAS**, on May 21, 2018, Named Plaintiffs filed a complaint in the United States District Court for the Southern District of New York, Docket Number 1:18-cv-04502-PAC-GWG (the "**Lawsuit**"), on behalf of themselves, individually, and on behalf of all others similarly situated, alleging unpaid overtime and other statutory wage-related claims pursuant to both the collective action provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and on behalf of a putative Federal Rule of Civil Procedure ("**FRCP**") 23 class under the New York Labor Law ("**NYLL**"), NYLL § 160; N.Y. Comp. Codes R. & Regs. ("**NYCRR**"); and

**WHEREAS**, Defendant timely filed an answer to the complaint in which it denied the material allegations and claims asserted therein; and

**WHEREAS**, the Parties, following the commencement of the Lawsuit, engaged in substantial written discovery concerning Named Plaintiffs' time, pay, and employment records; and

**WHEREAS**, on September 17, 2018, Named Plaintiffs moved for conditional certification of a collective and leave to distribute notice pursuant to the FLSA, 29 U.S.C. § 216(b), which Defendant opposed; and

**WHEREAS**, on March 25, 2019, while Named Plaintiffs' conditional certification motion was pending, the Parties participated in a mediation through the Southern District of New York's mediation program, which did not result in a settlement; and

**WHEREAS,** on June 26, 2019, Magistrate Judge Gabriel W. Gorenstein, to whose jurisdiction the Parties have since consented for all purposes, ECF # 111, ("the Court"), granted in part and denied in part Named Plaintiffs' conditional certification motion, conditionally certifying a collective of all Registered Nurses ("RNs") and Licensed Practical Nurses ("LPNs") (together, where appropriate, as "Nurses") who worked for Defendant in New York at any time during the three-year period prior to July 11, 2019, which led Named Plaintiffs' counsel to disseminate notice to 251 potential opt-in Plaintiffs; and

**WHEREAS**, as a result of sending out notice, thirty-seven individuals joined this action in addition to Named Plaintiffs, for a total of thirty-nine individual party Plaintiffs, a list of said individuals is attached hereto as ***Appendix A***; and

**WHEREAS**, the Parties engaged in substantial post-conditional certification discovery consisting of, among other things, the exchange and analysis of documents pertinent to the claims in the Lawsuit asserted on behalf of the collective and putative class, as well as substantial financial records regarding Defendant and Defendant's President and Chief Executive Officer, Godfrey Echendu, and the Parties performed their own investigation into the claims, including interviewing potential witnesses concerning the Nurses' job duties, hours worked, and pay of employees in relation to the allegations in the Lawsuit; and

**WHEREAS**, on October 28, 2019, after several months of arm's length negotiations following the Parties' March 25, 2019 mediation, the Parties reached an agreement in principle to resolve this matter on a class- and collective-wide basis for all of Defendant's Nurses who worked for them in New York at any time between January 1, 2015 and the present; and

**WHEREAS,** the purpose of this Agreement is to settle fully and finally all claims alleged in the Lawsuit, between Named Plaintiffs, the Collective, and Class Members, on the one hand, and Defendant and Releasees (all as defined below), on the other hand; and

**WHEREAS**, Defendant denies all of the material allegations alleged by Named Plaintiffs, and denies that it is liable or owes damages to anyone with respect to the alleged facts or claims asserted in the Lawsuit; and

**WHEREAS**, without admitting or conceding any liability or damages whatsoever, Defendant agrees, subject to court approval, to settle the Lawsuit on the terms and conditions set forth in this Agreement, solely to avoid the burden and expense of continued litigation; and

**WHEREAS**, Plaintiff's Counsel (defined below) performed a thorough study of the law and facts relating to the claims asserted in the Lawsuit and has concluded, based upon their investigation and discovery exchanged, and taking into account the contested issues, the expense

2

and time necessary to pursue the Lawsuit through further litigation, the risks and costs of further prosecution of the Lawsuit, the uncertainties of litigation, and the benefits to the Class Members , that a settlement with Defendant on the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Collective and Class Members.

      **NOW, THEREFORE**, in consideration of the mutual covenants and promises as set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement on the following terms and conditions:

1.   **DEFINITIONS.**   The defined terms set forth in this Agreement have the meanings ascribed to them below.

    **1.1**    **Agreement.**  "Agreement" means this Joint Stipulation of Collective and Class Action Settlement and Release and all exhibits attached hereto.

    **1.2**    **Check Cashing Period**. "Check Cashing Period" means the deadline by which Participating Claimants must cash their Settlement Checks, which shall be 120 days following the date said checks are mailed by the Settlement Claims Administrator.

    **1.3**    **Claim Form.**  "Claim Form" means the form approved by the Court that a Class Member must submit in order to be eligible to become a Participating Claimant, and attached hereto as **Exhibit 3**.

    **1.4**    **Claim Form Deadline.**  "Claim Form Deadline" means the date ninety (90) days after the Notice and Claim Form is initially mailed to the Class Members, unless additional time is allowed if good cause is shown, as described in Section 5.2(F), below.

    **1.5**    **Class Counsel.**  "Class Counsel" or "Plaintiff's Counsel" means Borrelli & Associates, P.L.L.C., 910 Franklin Avenue, Suite 200, Garden City, New York 11530.

    **1.6**    **Class Members.**  "Class Members" means all current and former Nurses who worked for Defendant in New York at any point during the Class Period.

    **1.7**    **Class Period.**  The "Class Period" is January 1, 2015, through the earlier of either 180 days following submission of the Motion for Preliminary Approval, or the date of the Final Approval Order, whichever is sooner.

    **1.8**    **Court.**  "Court" means the United States District Court for the Southern District of New York.

    **1.9**    **Days.**  "Days" means calendar days.

    **1.10**    **Defendant.** "Defendant" means PROMISE HOME CARE AGENCY, INC.

    **1.11**    **Defendant's Counsel.**  "Defendant's Counsel" means Hodgson Russ LLP, 605 Third Avenue, Suite 2300, New York, New York 10158.

1.12 **Employer-Side Payroll Taxes**.   "Employer-Side Payroll Taxes" means Defendant's share of any federal, state, and/or local payroll taxes, including but not limited to employer contributions to FICA.

1.13 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Final Approval Motion referenced in Section 7 below.

1.14 **Final Approval Order.** "Final Approval Order" means the Order to be entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks, Service Awards, attorneys' fees and costs, and claims administration fees, dismissing the Lawsuit with prejudice, and entering judgment pursuant to this Agreement.

1.15 **Final Effective Date**. "Final Effective Date" means the later of (i) the date after which the Settlement is fully funded to satisfy all Claimed Funds, as set forth in Section 9.1(B), below, or (ii) the day after the deadline for any appeal of the Final Approval Order, if no appeal is taken, or if an appeal is taken, then the expiration of the time to file a petition for writ of certiorari to review the Circuit Court's dismissal of the appeal or affirmation of the Final Approval Order, if no petition is filed, or if a petition is filed with respect to the Circuit Court's affirmance, the date such petition is denied or dismissed, or if granted, the date of final affirmance of the Final Approval Order following review pursuant to that grant.

1.16 **Gross Settlement Amount.** "Gross Settlement Amount" means a sum not to exceed One Million One Hundred Thousand Dollars and Zero Cents ($1,100,000.00), which is the maximum amount that Defendant has agreed to pay to settle the Lawsuit as set forth in this Agreement.

1.17 **Individual Settlement Shares.** "Individual Settlement Shares" means the sum to be provided to any Participating Claimant out of the Net Settlement Amount, as calculated pursuant to the formula set forth in Section 9.2(B), below.

1.18 **Last Known Address.** "Last Known Address" means the most recently recorded physical mailing address for a Class Member as such information is contained in Defendant's files.

1.19 **Net Settlement Amount.** The "Net Settlement Amount" shall be the portion of the Gross Settlement Amount available for distribution to Class Members who submit a valid and timely Claim Form, after deductions for attorneys' fees and costs, Service Awards, and claims administration fees.

1.20 **Notice.** "Notice" means the Court-approved Notice of Pendency of Class Action Settlement, attached hereto as **Exhibit 1**.

1.21 **Objector.** "Objector" means an individual who timely files an objection to this Agreement, and does not include any individual who opts-out of this Agreement.

**1.22** **Opt-in Plaintiffs**. "Opt-in Plaintiffs" means the individuals in addition to Named Plaintiffs who filed their consent to join forms and thereby became parties Plaintiff to this action following Named Plaintiffs' motion for conditional certification, and which such individuals are listed in **Appendix A**, attached to this Agreement.

**1.23** **Opt-Out Period**. "Opt-Out Period" means the deadline by which an Opt-out Statement must be postmarked or received within, which shall conclude ninety (90) days from the mailing of the Notice to Class Members.

**1.24** **Opt-Out Statement.** "Opt-Out Statement" means a written statement from a Class Member that: (1) expressly states, in sum or substance, that "I ELECT TO EXCLUDE MYSELF FROM THE SETTLEMENT IN *Abraham v. Promise Home Care Agency, Inc.*"; (2) includes the Class Member's name, address, and telephone number; and (3) bears the Class Member's signature.

**1.25** **Participating Claimant.** "Participating Claimant" means each Class Member who either (a) has already opted-in to this Lawsuit following conditional certification; or (b) timely submits a Claim Form and Release by the Claim Form Deadline.

**1.26** **Parties.** "Parties" shall mean Named Plaintiffs and Defendant.

**1.27** **Plaintiffs.** "Plaintiffs" shall mean the Named Plaintiffs, Helen Abraham and Natoya Kerdeane Sylvester, and the thirty-seven Opt-in Plaintiffs found on **Appendix A** who filed their consent-to-join forms throughout the course of this action.

**1.28** **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court, preliminarily approving the terms and conditions of this Agreement, and directing the manner and timing of providing Notice to the Class Members.

**1.29** **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the interest-bearing account established by the Settlement Claims Administrator to hold payments received from the Defendant under this Agreement in escrow. The QSF shall consist of settlement awards to Participating Claimants, as calculated pursuant to Section 9.2 of this Agreement, approved attorneys' fees and costs, Service Awards to Named Plaintiffs, and claims administration fees. The QSF shall be controlled by the Settlement Claims Administrator for the purposes of completing the settlement set forth under this Agreement, subject to the terms of this Agreement and the Court's Orders for Preliminary Approval and Final Approval. Interest, if any, earned on the QSF shall be returned to Defendant, subject to the terms and conditions of Section 4.7, below. The Settlement Claims Administrator will maintain the QSF at a federally-insured bank that is mutually acceptable to the Parties and will not permit any other funds to be co-mingled within the QSF other than those contemplated under this Agreement or otherwise ordered by the Court. To the extent that any amounts remain in the QSF once all settlement awards to Participating Claimants, approved attorneys' fees and costs,

Service Awards to Named Plaintiffs, and claims administration fees, required under this Agreement, have been satisfied, such amounts will revert to the Defendant in accordance with Section 4.7 and 9.1(D) below.

1.30 **Released Class Claims.** "Released Class Claims" means the following: Effective as of the date of the Preliminary Approval Order,each Class Member who does not exclude him/herself from this settlement by the deadline to do so (i.e., who does not opt-out), regardless of whether such person submits a timely claim form, shall be deemed to fully, finally, and forever completely settle, compromise, release, and discharge Releasees from any and all claims for any wage and hour violations that may have occurred arising from or relating to each Class Member's employment or engagement with Defendant under New York state and/or local law, including but not limited to any and all claims for unpaid overtime or minimum wage pay, failure to maintain and furnish employees with proper wage records, failure to furnish notices of pay rate, failure to pay spread of hours pay, failure to pay call-in pay, and all other claims that were or could have been asserted in the Lawsuit, whether known or unknown, under New York state and/or local wage and hour laws (including but not limited to the NYLL, the NYCRR, and the New York Wage Theft Prevention Act), from January 1, 2015 through the earlier of either 180 days following submission of the Motion for Preliminary Approval, or the date of the Final Approval Order, whichever is sooner. The foregoing release and discharge includes all claims for unpaid regular, overtime or minimum wages, claims under any New York wage and hour and wage payment law claims (including statutory claims), late payment of wages, vacation, commissions, bonuses, severance pay, all other possible claims arising under any New York state or local wage and hour law or regulation, interest on such claims, liquidated damages, penalties, attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind or nature whatsoever related to such claims, arising from each such Class Member's employment with Defendant and/or Releasees.   Said release and discharge shall bind each Class Member and his or her current, former, and future heirs, spouses, executors, administrators, agents, and attorneys.

1.31 **Released Participating Claimant Claims.** "Released Participating Claimant Claims" means the following: Effective as of the date of the Preliminary Approval Order, each Participating Claimant shall be deemed to fully, finally, and forever completely settle, compromise, release, and discharge Releasees from i) the Released Class Claims as defined under Section 1.30 above and ii) any and all claims for any wage and hour violations that may have occurred arising from or relating to each Participating Claimant's employment or engagement with Defendant, including but not limited to any and all claims for unpaid regular, overtime or minimum wages, failure to maintain and furnish employees with proper wage records, failure to furnish notices of pay rate, failure to pay call-in pay, and all other claims that were or could have been asserted in the Lawsuit, whether known or unknown, under any federal law or regulations (including, but not limited to, the Fair Labor Standards Act, 29 U.S.C. § 201, et seq), from January 1, 2015 through the earlier of either 180 days following submission of the Motion for Preliminary Approval, or the date of the Final Approval Order, whichever is sooner.

The foregoing release and discharge includes all claims for unpaid regular or overtime wages, late payment of wages, vacation, commissions, bonuses, severance pay, all other possible claims arising under any federal wage and hour law or regulation, interest on such claims, liquidated damages, penalties, attorneys' fees and costs related to such claims, and all other available remedies and relief of any kind or nature whatsoever related to such claims, arising from each such Participating Claimant's employment with Defendant and/or Releasees.  Said release and discharge shall bind each Participating Claimant and his or her current, former, and future heirs, spouses, executors, administrators, agents, and attorneys.

1.32    **Releasees.**  "Releasees" means Defendant, and its present and former affiliates, related entities, divisions, subsidiaries, parents, predecessors, successors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders, owners, insurers or reinsurers, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

1.33    **Reminder Postcard.** "Reminder Postcard" means the notice to be mailed to Class Members by the Settlement Claims Administrator within forty-five (45) days after the initial mailing of the Notice, in a form attached hereto as **Exhibit 2**.

1.34    **Service Award.**  "Service Award" means the aggregate portion of the Gross Settlement Fund, if any, requested by the Service Award Recipients and approved by the Court as a reasonable incentive award to the Service Award Recipients for representing the interests of the Class Members.  The total combined Service Awards for all Service Award Recipients shall not exceed $30,000.00.

1.35    **Service Award Recipients.** "Service Award Recipients" means Helen Abraham and Natoya Kerdeane Sylvester.

1.36    **Service Award Recipient Released Claims**. "Service Award Recipient Released Claims" means i) the Released Claims, as defined under Section 1.30 above; ii) the Released Participating Claimant Claims, as defined under Section 1.31 above; and iii) any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against Defendant or Releasees, Named Plaintiffs, their heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter later determine that they have or had upon, or by reason of, any cause or thing whatsoever arising out of or relating to their employment with Defendant, including, but not limited to, claims arising under the Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974, including but not limited to, breach of

fiduciary duty and equitable claims to be brought under §1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, and/or any other federal, state or local human rights, civil rights, wage-hour, wage payment, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under such laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Defendant or Releasees, including any claim for attorneys' fees, expenses or costs based upon any conduct from the beginning of the world through the earlier of either 180 days following submission of the Motion for Preliminary Approval, or the date of the Final Approval Order, whichever is sooner; provided, however, that Named Plaintiffs/Service Award Recipients do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or other governmental agency, subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further provided, however, that Named Plaintiffs do not release any claim for breach of the terms of the Agreement. Nor shall anything in this Release prohibit or restrict Named Plaintiffs from: (i) providing information to, or otherwise assisting in, an investigation by Congress, the Equal Employment Opportunity Commission, the Securities and Exchange Commission ("SEC"), or any other federal, state, or local regulatory or law enforcement agency in response to any request for information by such agency; or (ii) complying with a lawful subpoena or other legal process, subject to the terms of this Agreement.

1.37   **Settlement Checks.**  "Settlement Checks" means checks issued to Participating Claimants for their share of the Net Settlement Amount, based on the formula set forth in Section 9.2.

1.38   **Settlement Claims Administrator.**  The "Settlement Claims Administrator" shall be Rust Consulting, Inc., an entity experienced in the administration of class action settlements.

1.39   **Updated Address.**  "Updated Address" means a mailing address that was updated via a standard skip trace or an updated mailing address provided by the United States Postal Service or by a Class Member.

2.   **NON-ADMISSION OF LIABILITY.**  Nothing relating to this Agreement, or any communications, papers, or orders related to this settlement, shall be cited to as, construed to be admissible as, or deemed an admission by Defendant or Releasees of any liability, culpability, negligence, or wrongdoing toward Plaintiffs, the Class Members, or any other person, and Defendant and Releasees specifically disclaim any liability, culpability,

negligence, or wrongdoing toward Plaintiffs, the Class Members, or any other person, or that class certification is appropriate in this or any other matter.  Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies.  This Agreement, and any communications, papers, or orders related to the settlement, may not be cited to, used, or admitted as evidence of liability or that class action certification is appropriate in the absence of this Agreement.  There has been no determination by any court as to the merits of the claims asserted by Plaintiffs against Defendant or as to whether a class should be certified.

3.     **STIPULATED COLLECTIVE AND CLASS.**  The Parties stipulate, for settlement purposes only, to a single class of Nurses consisting of two overlapping subclasses, defined respectively as any RN or any LPN who worked for Defendant in New York at any time during the Class Period.  Defendant represents that there are approximately 471 Class Members who fit within this definition.

4.     **RETENTION OF THE SETTLEMENT CLAIMS ADMINISTRATOR.**   Without limiting any duties set forth elsewhere in this Agreement, the Settlement Claims Administrator's duties shall include the following:

   4.1     The Settlement Claims Administrator shall mail the Notices to Class Members in accordance with Section 5.2.

   4.2     The Settlement Claims Administrator shall provide reports to counsel for the Parties regarding the status of the mailing of the Notices to Class Members, a summary of the number of individuals who have filed claims forms or requested to opt-out or submitted objections, the claims administration process, distribution of the Settlement Checks, and other matters relating to the Settlement.

   4.3     The Settlement Claims Administrator shall keep accurate records of the dates on which it sends Notices to Class Members.  The Settlement Claims Administrator shall keep accurate records of all Opt-Out Statements in accordance with Section 6.2.  The Settlement Claims Administrator shall keep accurate records of all Claim Forms in accordance with Section 6.1.  The Settlement Claims Administrator shall keep accurate records of all Objections in accordance with Section 6.3.

   4.4     Defendant's Counsel and Class Counsel agree to reasonably cooperate with the Settlement Claims Administrator, provide accurate information, and provide other reasonably available information related to the administration of the Settlement.

   4.5     The Settlement Claims Administrator will decide issues with respect to validity or timeliness of claims, objections, or Opt-Out Statements in consultation with Class Counsel and Defendant's Counsel in accordance with the terms of this Agreement.

   4.6     The Settlement Claims Administrator shall calculate settlement awards and handle tax payments and reporting in accordance with Section 9.5.

**4.7**    The Settlement Claims Administrator shall return to Defendant any remaining amounts in the QSF within ten (10) days following the Check Cashing Period except for those amounts associated with any void and uncashed Settlement Checks, which shall be returned to Defendant, to the extent such amounts remain unpaid to Participating Claimants, within thirty (30) days following the Check Cashing Period as set forth in Section 9.1(D).

**4.8**    In the event that either Defendant's Counsel or Class Counsel take the position that the Settlement Claims Administrator is not acting in accordance with the terms of this Agreement, such party shall meet and confer with opposing counsel prior to raising any such issue with the Claims Administrator or the Court.

5.    **PRELIMINARY APPROVAL AND CLASS NOTICE.**

**5.1**    **Preliminary Approval Motion.**

(A)    Named Plaintiffs shall file a Motion for an Order Preliminarily Approving the Joint Stipulation of Class Action Settlement and Release and Certification of the Rule 23 Class (the "**Preliminary Approval Motion**"). Such motion will be on consent and subject to defense counsel's prior review and approval.

(B)    The Preliminary Approval Motion shall request an Order from the Court setting deadlines for Class Members to submit Claim Forms, Opt-Out Statements, or objections to this Agreement, and scheduling a Fairness Hearing for Final Approval of the Settlement at the earliest practicable date.

**5.2**    **Notice to Class Members.**

(A)    Within thirty (30) days of the Parties' receipt of the Court's issuance of a Preliminary Approval Order, Defendant shall provide the Settlement Claims Administrator and Class Counsel, in electronic form, with a list of all Class Members (the "Class List"), which shall contain the following information: (i) each Class Member's hire and termination date; (ii) social security numbers of each Class Member, if available; (iii) first and last name of each Class Member; and (iv) the last known email address and mailing address, and any former addresses, if available, of each Class Member. The Class List and the data and information contained in the Class List shall not be disclosed to anyone external to Defendant's counsel, Class Counsel, and the Settlement Claims Administrator without the written consent of Defendant.

(B)    Within thirty (30) days of receipt of the Class List from Defendant, the Settlement Claims Administrator shall send the Notices and Claim Forms to Class Members via United States first class mail, postage prepaid, and electronic mail.

(C)    Within forty-five (45) days of the initial mailing of the Notices and Claim Forms to Class Members, the Settlement Claims Administrator shall mail a reminder postcard in the form attached hereto as **Exhibit 2**, to Class Members via United States first class mail, postage prepaid.

(D)    In the event that, subsequent to the mailing of the Notices and Claim Forms and prior to the Claim Form Deadline, a Notice is returned to the Settlement Claims Administrator by the United States Postal Service with an updated address, the Settlement Claims Administrator shall re-mail the Notice to that address within seven (7) days.  In the event that subsequent to the mailing of the Notices a Notice is returned to the Settlement Claims Administrator by the United States Postal Service with no forwarding address, the Settlement Claims Administrator shall perform a standard skip trace in an effort to ascertain the updated address for the Class Member in question.  If such address is ascertained, the Settlement Claims Administrator shall re-send the Notice promptly upon receiving such information, and in no event later than seven (7) days after receiving the information.

(E)    The Settlement Claims Administrator shall mail and/or email the Notice to any Class Member who, either directly or through a representative, contacts the Settlement Claims Administrator during the time period between the initial mailing of the Notice and the Claim Form Deadline and requests that the Notice be re-mailed.

(F)    In the event of any dispute over (1) a Class Member's dates of employment, (2) the late submission of any Claim Forms, or (3) whether there was good cause shown for why a check was not cashed within the 120-day Check Cashing Period, the Parties will meet and confer in good faith in an effort to resolve the dispute, and if the Parties are unable to reach an agreement, the Settlement Claims Administrator shall decide the dispute, and its decision will be final; however, to the extent any Claim Forms are submitted late, but prior to submission of the Final Approval Motion, for which there is a good faith explanation to support the untimely submission, it will be presumed that the Settlement Claims Administrator will accept same.

6.    **CLASS MEMBER RESPONSES TO NOTICE**.

    **6.1    Participating Claimants.**

(A)    Class Members other than Named Plaintiffs and the Opt-in Plaintiffs who wish to become Participating Claimants must timely complete, execute, and mail, email or fax, per the instructions therein, the form entitled Claim Form and Release enclosed with the Notice.  Subject to the provisions of 5.2(F), if the Claim Form and Release is not postmarked or received by the Settlement Claims Administrator and/or Class Counsel by on or before the Claim Form Deadline, then that Class Member will be deemed to have forever waived his or her right to be a Participating Claimant and thus to receive payment under this settlement.  Class Members who do not submit the Claim Form and Release or an Opt-Out Statement in a timely and proper fashion shall be subject to the judgment and the release of claims against Releasees as set forth in this Agreement.  Only Participating Claimants shall be entitled to payment pursuant to the settlement and this Agreement.

(B)    Named Plaintiffs and the Opt-in Plaintiffs who have already filed their consent-to-join forms with the Court following Named Plaintiffs' motion for conditional certification, and listed on the attached **Appendix A**, shall automatically become Participating Claimants and need not complete or return any Claim Forms to become eligible to receive their Individual Settlement Shares. Opt-in Plaintiffs shall retain the right to opt-out of the Settlement if they so choose.

(C)    A Class Member who files a timely, but incomplete, Claim Form shall be notified immediately by the Settlement Claims Administrator of the nature of the defect and shall be instructed by the Settlement Claims Administrator via United States First Class Mail, postage prepaid, to cure the defect within twenty (20) days of the mailing. Any Class Member who fails to cure the defect within twenty (20) days of said mailing, or the Claim Form Deadline, whichever is later, shall not be deemed to be a Participating Claimant. Class Members who fail to timely cure the defect shall be subject to the judgment and the release of claims set forth in Section 10.1, below.

(D)    A Class Member who submits an Opt-Out Statement and also submits a Claim Form shall immediately be sent a cure letter by the Settlement Claims Administrator via United States First Class Mail, postage prepaid, seeking clarification of whether he/she intends to opt-out of the settlement or become a Participating Claimant. Absent a response to the contrary within twenty (20) days of the mailing, or the Claim Form Deadline, whichever is later, such Class Member shall be deemed to have opted-out of the settlement pursuant to Section 6.2.

**6.2    Class Member Opt-Outs.**

(A)    Class Members who choose to opt-out of the settlement as set forth in this Agreement must mail, via First Class United States Mail, or some other form of mail postage prepaid, a signed Opt-out Statement (as defined in Section 1.24, above) to the Settlement Claims Administrator. To be effective, an Opt-out Statement must be postmarked or received by the Settlement Claims Administrator by before the end of the Opt-out Period. The Settlement Claims Administrator shall stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendant's Counsel not later than three (3) days after receipt thereof. The Settlement Claims Administrator will, within three (3) days of the end of the Opt-out Period, send a final list of all Opt-Out Statements to Class Counsel and Defendant's Counsel by email. The Settlement Claims Administrator shall retain the stamped originals of all Opt-Out Statements and originals of all envelopes accompanying Opt-Out Statements in its files until such time as the Settlement Claims Administrator is relieved of its duties and responsibilities under this Agreement.

(B)    Any Class Member who does not properly submit an Opt-Out Statement pursuant to this Agreement shall be bound by the Settlement and the terms of this Agreement and shall have released all claims as set forth in this Agreement.

**6.3    Class Member Objections to Settlement.**

(A)    Any Class Member who wishes to become an Objector must do so by submitting an Opt-Out Statement in writing within the Opt-out Period. To be considered, a written objection must be mailed to the Settlement Claims Administrator via United States First Class Mail, or by some other method postage prepaid, and be postmarked or received by the Settlement Claims Administrator within sixty (60) days from the mailing of the Notice to the Objector. The written objection must include words to the effect of, "I object to the settlement in *Abraham v. Promise Home Care Agency, Inc.*," as well as all reasons for the objection. Any reasons not included in the written objection shall not be considered and be deemed waived. The written objection must also include the name, address, and telephone number for the Objector. The Settlement Claims Administrator shall stamp the date received on the original and send copies of each objection to Class Counsel and Defendant's Counsel by email delivery no later than three (3) days after receipt thereof. It is the responsibility of any Objector to retain a copy of the objection and proof of timely mailing hereunder.

(B)    A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel retained by the Objector. Any Objector wishing to appear through counsel shall have his/her counsel file a notice of appearance on behalf of that Objector at least thirty (30) days prior to the Fairness Hearing. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objection at the time that he or she submits his or her written objections including words to the effect of, "I intend to appear at the Fairness Hearing" in his or her written objection. An Objector may withdraw his or her objections at any time. A Class Member who has submitted an Opt-Out Statement may not submit objections to the Settlement.

(C)    The Parties may file with the Court written responses to any filed objections contemporaneously with the filing of Named Plaintiffs' Final Approval Motion.

**7.    FAIRNESS HEARING AND FINAL JUDGMENT.**

**7.1    Motion for Judgment and Final Approval.** Not later than thirty (30) days before the Fairness Hearing, or by another deadline set by the Court, Named Plaintiffs shall submit a Final Approval Motion. All such documents shall be provided to Defendant's Counsel at least five (5) business days before the submission for Defendant's Counsel's review, comment, and approval.

**7.2    Entry of Judgment.** At the Fairness Hearing, the Parties shall request that the Court, among other things, (a) finally certify the Class for purposes of settlement only, (b) enter final judgment with prejudice in accordance with this Agreement, (c) approve the settlement and Agreement as final, fair, reasonable, adequate, and binding on all Class Members who have not timely opted-out pursuant to Section 6.2, (d) approve the release of claims, (e) approve the requested Service Awards, (f) approve the requested attorneys' fees and costs, (g) approve the fees of the

Claims Administrator,  and (h) retain jurisdiction over the administration and enforcement of this Agreement, as may be necessary.

8. **TERMINATION AND ITS EFFECTS.**

8.1 **Defendant's Right to Terminate.** Defendant shall have the discretionary right to terminate this Agreement in the event that more than 10% of the eligible Class Members elect to exclude themselves by filing Opt-out Statements.  Defendant must advise Class Counsel within three (5) business days after the Claim Form Deadline if Defendant intends to exercise its right to terminate.  If Defendant terminates this Agreement, it will bear the full costs of the Settlement Claims Administrator and of providing notice of any termination of the Settlement as described herein, and the Lawsuit will return to the *status quo ante* as if this Settlement Agreement were never executed.  In such event, the Settlement Claims Administrator shall provide notice to all Participating Claimants informing them that the settlement was voided, that as a result, no payments will be made to Participating Claimants under the Agreement, and that the Lawsuit will continue, along with any additional information jointly agreed to by Class Counsel and Defendant's Counsel.  Such notice shall be emailed and mailed by the Settlement Claims Administrator via United States first class mail, postage prepaid, to the addresses contained on the Participating Claimant's Consent to Join Settlement Form and/or to his or her Updated Address.

8.2 **Effect of Termination or Failure to Obtain Preliminary or Final Approval.**  In the event that this Agreement is not approved in its entirety by the Court, excluding modifications that the Parties determine in their reasonable and good faith judgment not to be material modifications, or in the event that the settlement set forth in this Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, or if the judgment does not become a final judgment, or if the Final Effective Date does not occur, the Parties shall proceed as follows:

(A) No payments shall be made by the Claims Administrator to anyone in accordance with the terms of this Agreement.

(B) This Agreement shall be deemed null and void, and the terms and provisions shall have no further force or effect.

(C) Neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the terms as set forth in this Agreement, may be cited to, used, or deemed admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

(D) The Lawsuit shall proceed without prejudice as if this Agreement had not been executed unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of judgment; or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

(E)     None of the Parties, by virtue of entering into this Agreement or performing under it, shall be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class action certification or the merits of Plaintiffs' claims or any other issue, but rather shall retain the right to assert or dispute all claims and allegations, to assert or dispute all applicable defenses, and to assert or dispute the propriety of class action certification on all applicable grounds.

(F)     Any judgment or order entered by the Court in accordance with the terms of the Agreement shall be treated as vacated, *nunc pro tunc*.

(G)     Class Counsel retains and reserves all rights to appeal or seek reconsideration of any order of the Court reducing the amount of attorneys' fees or expenses to be paid to Class Counsel and/or any Order of the Court reducing the amount of any Service Award.  Defendant shall not oppose the appeal or motion for reconsideration so long as Class Counsel seeks an amount that does not exceed the fees and costs contemplated in this Agreement.

(H)     If the Agreement is terminated because the Court fails to grant Final Approval, the Settlement Claims Administrator shall provide notice to all Participating Claimants informing them that the settlement was voided, that as a result, no payments will be made to Participating Claimants under the Agreement, and that the Lawsuit will continue, along with any additional information jointly agreed to by Class Counsel and Defendant's Counsel.  Such notice shall be mailed by the Settlement Claims Administrator via United States first class mail, postage prepaid, to the addresses contained on the Participating Claimant's Consent to Join Settlement Form and/or to his or her Updated Address. The costs of the Claims Administrator to send such notice, as well as all costs incurred by the Claims Administrator to that point, shall be shared equally by the Parties.

(I)      If the Class has already been certified for settlement purposes, the class that was certified as part of this Agreement shall be decertified and the Parties shall jointly move as soon as practicable to obtain an Order granting decertification, and the fact of certification shall not be cited to, used, or be admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural. Named Plaintiffs, however, retain all rights to later move for class certification as provided in FRCP 23.

(J)     Class Counsel may not use any information obtained as a result of or in connection with this Agreement for this Lawsuit or any other purpose, but reserves the right to seek to obtain any such information through the discovery process.

(K)     The Claims Administrator must return all information and documents to Defendant.

9. **SETTLEMENT TERMS.**

   9.1 **Settlement Amount.**

   (A)  Defendant agrees to pay up to the Gross Settlement Amount, which includes: all payments to Participating Claimants; Class Counsel's approved attorneys' fees and costs; claims administration fees; and any approved Service Awards to Named Plaintiffs. Defendant will not be required to pay or contribute any monies in excess of the Gross Settlement Amount. No payments shall be made to Opt-outs or to those Class Members who fail to become Participating Claimants  Employer-side Payroll Taxes for all Participating Claimants are to be paid by Defendant separately from the Gross Settlement Amount or out of any amount to be returned to Defendant from any unclaimed funds if such amount is sufficient to cover the Employer-side Payroll Taxes.

   (B)  Defendant shall fund the QSF by depositing with the Settlement Claims Administrator the following amounts according to the following schedule:

   i.  within thirty (30) days following the Preliminary Approval Order, $150,000.00;

   ii.  every thirty (30) days, beginning sixty (60) days following the Preliminary Approval Order, $50,000.00, until either: the entire amount necessary to satisfy the claims of all Participating Claimants, Service Award Recipients, and to pay the requested fees and costs of Class Counsel, and the Settlement Claims Administrator's fees is sufficient (hereinafter "Claimed Funds"); or the GSF is fully funded; or the Court enters the Final Approval Order; and

   iii.  if, upon entry of the Final Approval Order, the Settlement is not fully funded so that the Claimed Funds may be paid in their entirety, $50,000.00 every thirty (30) days after the entry of the Final Approval Order, plus - - beginning sixty (60) days following entry of the Final Approval Order - - the sum of 9% interest *per annum* running from sixty (60) days from entry of the Final Approval Order, compounded monthly, on all funds remaining to be paid, until the Claimed Funds are fully satisfied.

   (C)  Within five (5) business days of the Final Effective Date, the Settlement Claims Administrator shall mail the Settlement Checks to Participating Claimants, the Service Award Recipients, and to Class Counsel for attorneys' fees and costs, and shall also retain and pay to itself the remaining amount necessary to satisfy the Settlement Claims Administrator's fees, the latter of which is not to exceed Fourteen Thousand dollars ($14,000.00).

   (D)  Subject to the dispute resolution procedures outlined in Section 5.2(F), above, Participating Claimants must cash their Settlement Checks within the 120-day Check Cashing Period. Settlement Checks not cashed within the Check Cashing Period will be void. The amounts in the QSF attributable to the void and uncashed Settlement Checks shall be returned to Defendant within thirty (30) days following

the end of the Check Cashing Period, unless a Participating Claimant contacts the Settlement Claims Administrator before expiration of such thirty (30) days and presents good cause for any delay in cashing their check beyond the Check Cashing Period, as set forth above in Section 5.2(F). Participating Claimants who do not cash their settlement checks shall remain bound by this Settlement and the Release applicable to Released Participating Claimant Claims set forth in Section 1.31, as the offer of remuneration and the transmittal of the Settlement Check itself is agreed by all Parties to be adequate consideration for the Release. This Agreement and the associated entry of judgment do not and shall not create any unpaid residue or unpaid residual with respect to the amounts of uncashed checks, and no distribution of such shall be required. The provisions of any unclaimed property statute or law do not apply to this action or this Agreement.

(E)     All payments to Participating Claimants made pursuant to this Agreement shall be deemed to be paid to such Participating Claimants solely in the year in which such payments actually are received by the Participating Claimants. It is expressly understood and agreed that any amount paid to any Participating Claimant shall not create any credit or otherwise affect the calculation of benefits provided under any pension, retirement, retirement savings, excess, or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or any benefit, pension, or other compensation or benefit plan, policy, program, or arrangement (collectively, the "Benefit Plans") provided by Defendant or any Releasee, and no payment made pursuant to this Settlement shall be considered as "Compensation," "Earnings," "Salary," or any similar definition under any Benefit Plans, and are not considered eligible compensation for Benefit Plans, or for Defendant's 401(k) Savings and Retirement Plans, or for any other benefit purposes, or otherwise require any contribution or award under any of Defendant's Benefit Plans, or otherwise modify benefits, contributions, or coverage under any of Defendant's Benefit Plans.

(F)     In the event of a default by Defendant with respect to funding the QSF following the date of Final Approval, Defendant shall be afforded a period of thirty (30) days to cure any such breach. Should Defendant fail to cure any such breach within thirty (30) days of receipt of notice from either Class Counsel or the Settlement Claims Administrator, Defendant agrees to entry of judgment against it, of the total amount of One Million One Hundred Thousand Dollars and Zero Cents ($1,100,000.00), minus any amount previously funded into the QSF, plus any attorneys' fees and costs incurred in obtaining any default judgment, and any reasonable attorneys' fees and costs incurred to collect said judgment.

**9.2     Settlement Checks to Participating Claimants.**

(A)     Each Participating Claimant shall be issued a Settlement Check by the Settlement Claims Administrator as set forth below, in accordance with the Final Approval Order.

(B)   A Participating Claimant's share of the Net Settlement Amount shall be determined by the Settlement Claims Administrator pursuant to the following formula:

    i.   For the period from January 1, 2015 through May 20, 2015:

        a.   Each Class Member who worked during this time period shall as a RN be awarded $2.63 per week as a RN, up to a total of $50.00, based on the number of weeks worked (i.e., if an RN worked nineteen (19) weeks from January 1, 2015 through May 20, 2015, he/she will be awarded $50.00). Said amount shall be deducted from the Net Settlement Amount (the "Adjusted Net Settlement Amount") prior to calculating each Participating Claimant's share of the Net Settlement as set forth in Section 9.2(B)(vi) below;

        b.   Each Class Member who worked during this time period as a LPN shall be assigned 1.0 point for each week worked as a LPN;

        c.   If a Class Member worked as both a RN and as a LPN in a given week during this time period, then the Class Member will be entitled to the same award as if they worked only as a RN for that week.

    ii.   For the period from May 21, 2015 through the date the preliminary approval motion is filed:

        a.   Each LPN shall be assigned 1.35 points for each week worked;

        b.   Each RN shall be assigned 1.6 points for each week worked.

        c.   If a Class Member worked as both a RN and as a LPN in a given week during this time period, then the Class Member will be entitled the same award as if they worked only as a RN for that week.

    iii.   Calculate the number of points for each Class Member.

    iv.   Add all points for all Class Members to obtain the "Total Denominator."

    v.   Divide the number of points for each Class Member by the Total Denominator to obtain each Class Member's allocated percentage of the Net Settlement Amount.

    vi.   Multiply each Participating Claimant's percentage against the Adjusted Net Settlement Amount, and if applicable, add to that

number any RNs' shares pursuant to 9.2(B)(i)(a) above to determine the Settlement Payment of each Participating Claimant.

The total of all possible settlement payments of Class Members shall not exceed the Net Settlement Amount.

(C)     The Settlement Checks shall be mailed to Participating Claimants by the Settlement Claims Administrator within ten (10) days of the Final Effective Date. The Settlement Check mailing shall include a Notice to Participating Claimants that they must notify the Settlement Claims Administrator of any changes to their addresses, and that their checks shall be void if not cashed within one hundred twenty (120) days of this mailing and that they will not be reissued absent a showing of good cause.

(D)     Defendant and the Settlement Claims Administrator shall exchange such information as is necessary and reasonably available for the Settlement Claims Administrator to make proper tax withholdings and comply with tax reporting obligations as described in Section 9.5.

**9.3     Service Awards.**

(A)     In return for services rendered to the Class Members, at the Fairness Hearing and in the Final Approval Motion, Class Counsel shall apply to the Court for a Service Award for the following individuals in the following amounts, for a combined total of Thirty Thousand Dollars and Zero Cents ($30,000.00):

  i.    Named Plaintiff Helen Abraham: Fifteen Thousand Dollars and Zero Cents ($15,000.00); and

  ii.   Named Plaintiff Natoya Kerdeane Sylvester: Fifteen Thousand Dollars and Zero Cents ($15,000.00);

(B)     The application for the Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit. The outcome of the Court's ruling on the application for the Service Awards shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion. Class Counsel shall have the right to appeal the Court's determination with respect to their application for Service Awards, which Defendant shall not oppose, provided that plaintiffs have not sought any relief beyond that contemplated by this Agreement.

(C)     Within ten (10) days of the Final Effective Date, the Settlement Claims Administrator shall mail the Court-approved Service Awards to the Service Award Recipients.

**9.4     Attorneys' Fees.**

(A)     At the Fairness Hearing and in the Final Approval Motion, Class Counsel shall petition the Court for an award of attorneys' fees of no more than Three Hundred Nineteen Thousand Dollars and Zero Cents ($319,000.00) (29% of the Gross Settlement Amount), and a separate amount for expenses that shall be set forth in Named Plaintiffs' Final Approval Motion and supported by an expense report detailing those costs, to be paid from the QSF.  Defendant shall not oppose such application.

(B)     The substance of Class Counsel's application for attorneys' fees and expenses is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Lawsuit.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and expenses shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion.  Class Counsel shall have the right to appeal the Court's determination with respect to their application for attorneys' fees or expenses, which Defendant shall not oppose.

(C)     Within ten (10) days of the Final Effective Date, the Settlement Claims Administrator shall mail the Court-approved attorneys' fees and expense check to Class Counsel.

**9.5     Tax Characterization.**

(A)     For tax purposes, the payments to Participating Claimants pursuant to Section 9.2 shall be allocated as follows: wages (50% of each settlement payment); and interest, liquidated damages, and/or penalties (50% of each settlement payment).

(B)     That portion of the payments treated as wages pursuant to Section 9.5(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state, and local income tax withholding and the employee share of the FICA tax using the most recent IRS Form W-4 that Defendant has on record, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number and/or taxpayer identification number on an IRS Form W-2.  The remaining portion of the payments treated as interest, liquidated damages, and/or penalties pursuant to Section 9.5(A) shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number and/or taxpayer identification number on an IRS Form 1099.  Payment of a Service Award pursuant to Section 9.3 shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number and/or taxpayer identification number on an IRS Form 1099.  Payments of attorneys' fees and costs pursuant to Section 9.4 shall be made without withholding and reported to the IRS and the payee under the payee's name and taxpayer identification number, which the payee shall provide for this purpose, on an IRS Form 1099.  Class Counsel agrees to provide the Claims Administrator with an IRS Form W-9.

(C)     The Settlement Claims Administrator shall be responsible for making all reporting, deposits, and withholdings with respect to all amounts payable to Service Award Recipients and Participating Claimants required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF or Defendant, as required by applicable law.

(D)     With respect to the portions of the payments reported as non-wage income, Service Award Recipients and Participating Claimants each shall indemnify and hold harmless Defendant for any taxes, penalties, interest or other amounts due or owing by that individual Service Award Recipient or Participating Claimant on such specific payments not subject to withholding. Other than as set forth above, Defendant shall not make from the payment to Service Award Recipients and Participating Claimants any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, or charity withholdings, and entry of the Final Approval Order and judgment by the Court shall be deemed authority not to make such deductions, withholdings, or additional payments. Named Plaintiffs acknowledge and agree that they have not relied upon any advice from Defendant as to the taxability of the payments received pursuant to this Agreement.

(E)     The Settlement Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and regardless of any provision in this Agreement, shall report the payments in accordance with applicable law.

(F)     Defendant shall be responsible for paying the Employer-side Payroll Taxes with respect to payments made to Participating Claimants in the manner set forth above.

(G)     The Defendant shall timely provide notice as required by the Class Action Fairness Act ("CAFA") and provide copies of such to Class Counsel and the Claims Administrator.

## 10.    RELEASE OF CLAIMS.

By operation of the entry of the Final Approval Order and Judgment:

**10.1    Class Members.** Each Class Member who does not timely and validly opt-out pursuant to this Agreement and is not a Participating claimant, on behalf of himself/herself, his or her current, former, and future heirs, spouses, executors, administrators, agents, and attorneys fully, finally and forever releases, dismisses with prejudice, relinquishes and discharges Releasees of the Released Class Claims, regardless of whether such individual files a Claim Form.

**10.2    Participating Claimants.** Each Participating Claimant, on behalf of himself/herself, his or her current, former, and future heirs, spouses, executors, administrators, agents, and attorneys, fully, finally and forever releases, dismisses with prejudice, relinquishes and discharges Releasees of the Released Participating Claimant Claims.

**10.3** **Service Award Recipient Plaintiffs.** Each Service Award Recipient Plaintiff, on behalf of himself/herself, his or her current, former, and future heirs, spouses, executors, administrators, agents, and attorneys fully, finally and forever releases, dismisses with prejudice, relinquishes and discharges Releasees of the Service Award Recipient Released Claims.

**11.** **INTERPRETATION AND ENFORCEMENT.**

**11.1** **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. The Parties shall work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and final judgment and dismissal. Each Party, upon the request of any other Party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

**11.2** **No Assignment.** Class Counsel and Named Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Lawsuit, or any related action.

**11.3** **Entire Agreement.** This Agreement and its exhibits constitute the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties (including the parties' settlement term sheet) shall be deemed merged into this Agreement.

**11.4** **Binding Effect.** This Agreement, subject to court approval, is a binding agreement and contains all material agreed-upon terms for the Parties to seek a full and final settlement of the Lawsuit. This Agreement, if approved, shall be binding upon the Parties and, with respect to Participating Claimants and Class Members, who have not opted out in accordance with the terms of this Agreement, their spouses, parents, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

**11.5** **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**11.6** **Captions.** The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**11.7** **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each Party participated jointly in the

drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any Party by virtue of draftsmanship.

**11.8    Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**11.9    Continuing Jurisdiction.**    The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby, including after the Court enters judgment.

**11.10   Waiver; Amendment.** No waiver, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**11.11   Counterparts.** The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

*[REMAINDER OF PAGE LEFT BLANK; SIGNATURE PAGE FOLLOWS]*

11.12 **Facsimile and Scanned Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**NAMED PLAINTIFFS AFFIRM AND REPRESENT THAT THEY ENTER INTO THIS AGREEMENT KNOWINGLY AND VOLUNTARILY AND THAT THEY HAVE CAREFULLY REVIEWED THIS AGREEMENT PRIOR TO EXECUTING THE SAME.**

**WE AGREE TO THESE TERMS,**

**Borrelli & Associates, P.L.L.C.**

By: _____
   Michael R. Minkoff, Esq.
      *As Class Counsel* **and on behalf of the Class**

Dated: _____01/08/2020_____

**NAMED PLAINTIFFS**

Helen Abraham: _____      Dated: **1/8-2020**

Natoya Kerdeane Sylvester: _____      Dated: **1/8/2020**

**DEFENDANT & RELEASEES:**

Godfrey Echendu
as President and on behalf of
PROMISE HOME CARE AGENCY, INC.

By: _____      Dated: _1/9/2020_

24