UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HELEN ABRAHAM and NATOYA
KERDEANE SYLVESTER, on behalf of
themselves, individually, and on behalf of all
others similarly-situated,

                     Plaintiffs,

      -against-

PROMISE HOME CARE AGENCY, INC.,

                  Defendant.

**Docket No.:
1:18-cv-4502 (GWG)**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT, SERVICE
AWARDS, AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND THE ENTRY
<u>OF FINAL JUDGMENT</u>**

Borrelli & Associates, P.L.L.C.
Michael R. Minkoff
Alexander T. Coleman
Michael J. Borrelli
655 Third Avenue, Suite 1821
New York, New York 10017
(212) 679-5000
(212) 679-5005
*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................................................i

I.    PRELIMINARY STATEMENT ...........................................................................1

II.   BACKGROUND .......................................................................................................2

      A.    Procedural History, Plaintiff's Allegations, Discovery, and Mediation...........2

      B.    Order Granting Preliminary Approval of Settlement.......................................3

      C.    Claims Administration ..............................................................................3

III.  ANALYSIS .................................................................................................................7

      A.    The Rule 23 Class Action Settlement is Fair, Adequate, and Reasonable .......7

            1.    Procedural Fairness...................................................................7

            2.    Substantive Fairness.................................................................9

      B.    The Court Should Approve the Settlement of the FLSA Claims ..................13

      C.    Service Award ......................................................................................14

      D.    Attorneys' Fees......................................................................................16

            1.    The Percentage Method is the Preferred Method for Awarding
                  Attorneys' Fees in Common Fund Cases in this Circuit........................16

                  a.    The Second Circuit Recently Found Percentage of the
                        Gross Settlement Fund, Rather than Percentage of Fund
                        Net Expenses to be Fair and Reasonable.....................................17

                  b.    The Goldberger Factors Support an Award of One-Third
                        of the Gross Fund Created...........................................................18

                        i.     The Firm's Time and Labor ................................................18

                        ii.    The Magnitude and Complexities of the Litigation .........20

                        iii.   The Risk of Litigation .......................................................20

                        iv.    The Quality of the Representation....................................21

                        v.     The Requested Fee in Relation to the Settlement ...........22

                        vi.    Public Policy Considerations............................................23

   **2.**  ***The Lodestar Cross-Check Further Supports an Award of One-Third of the Settlement Fund*** ...............................................................24

      **a.**  ***The Lodestar Multiplier is Within a Reasonable Range*** .............24

      **b.**  ***The Firm's Requested Rates are Fair and Reasonable*** ...............30

  **E.**  **Litigation Expenses** ..........................................................................32

  **F.**  **Claims Administrator's Fees and Costs** ..........................................32

**IV.**  **CONCLUSION** ...............................................................................................33

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Aguilar et al. v. Trolio Landscaping, Inc. et al.*,
   16-cv-2230 (CS) (S.D.N.Y. Feb. 16, 2017) ............................................................ 30

*Alleyne v. Time Moving & Storage, Inc.*,
   264 F.R.D. 41 (E.D.N.Y. 2010) .............................................................................. 11

*Azogue v. 16 for 8 Hospitality LLC*,
   2016 WL 441422 (S.D.N.Y. Aug. 19, 2016)..................................................... 13, 17

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) ...................................................................... *passim*

*Bijoux v. Amerigroup N.Y., LLC*,
   2016 WL 2839797 (E.D.N.Y. May 12, 2016) ........................................... 13, 20, 23

*Cabrera v. CBS Corp.*,
   2019 WL 502131 (S.D.N.Y. Feb. 8, 2019) ............................................................ 13

*Capsolas v. Pasta Res., Inc.*,
   2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) .......................................................... 24

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F. Supp. 2d 164 (E.D.N.Y. 2012) .................................................................. 10

*Cheeks v. Freeport Pancake House, Inc.*,
   796 F.3d 199 (2d Cir. 2015).................................................................. 1, 13, 14, 26

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974).......................................................................... 1, 9, 21

*Copper v. Cavalry Staffing, LLC et al.*,
   No. 14-cv-3676 (E.D.N.Y. Feb. 12, 2018) ........................................................... 31

*County of Suffolk v. Long Island Lighting*,
   907 F.2d 1295 (2d Cir. 1990)................................................................................. 7

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001)..................................................................................... 7

iii

*Davis v. J.P. Morgan Chase & Co.*,
　　827 F. Supp. 2d 172 (W.D.N.Y. 2011) ....................................................................... 24

*Deposit Guar. Nat'l Bank v. Roper*,
　　445 U.S. 326 (1980) .................................................................................................... 23

*Donnelly v. Peter Luger of Long Island, Inc.*,
　　2014 WL 12769046 (E.D.N.Y. Nov. 13, 20104) ........................................................ 8

*Dupler v. Costco Wholesale Corp.*,
　　705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...................................................................... 10

*Fisher v. SD Protection Inc.*, 948 F.3d 593 (2d Cir. 2020) ................................. *passim*

*Fleisher v. Phoenix Life Ins. Co.*,
　　2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ........................................................ 24

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*,
　　925 F.3d 63 (2d Cir. 2019) ....................................................................................... 16

*Fujiwara v. Sushi Yasuda LTD.*,
　　58 F. Supp. 3d 424 (S.D.N.Y. 2014) ........................................................ 25, 26, 29

*Goldberger v. Integrated Res. Inc.*,
　　209 F.3d 43 (2d Cir. 2000) ........................................................... 10, 17, 18, 22

*Gonzalez v. City of New York*,
　　396 F. Supp. 2d 411 (S.D.N.Y. 2005) ...................................................................... 11

*Gonzalez v. Scalinatella, Inc.*,
　　112 F. Supp. 3d 5 (S.D.N.Y. 2015) .......................................................................... 31

*Hadel v. Gaucho, LLC*,
　　2016 WL 3647600 (S.D.N.Y. June 30, 2016) ........................................................ 29

*Hernandez v. Immortal Rise, Inc.*,
　　306 F.R.D. 91 (E.D.N.Y. 2015) ......................................................................... *passim*

*In re Adelphia Commc'ns Corp. Sec. Litig.*,
　　271 Fed. App'x 41 (2d Cir. 2008) ............................................................................ 10

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
　　164 F.R.D. 362 (S.D.N.Y. 1996) .............................................................................. 10

*In re W. Union Money Transfer Litig.*,
　2004 WL 3709932 (E.D.N.Y. Oct. 19, 2004) ......................................................... 11

*Johnson v. Brennan*,
　2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ....................................................... 15

*Khait v. Whirlpool Corp.*,
　2010 WL 2025106 (E.D.N.Y. Jan. 20, 2010) ......................................................... 24

*Kochilas v. Nat'l Merchant Servs., Inc.*,
　2015 WL 5821631 (E.D.N.Y. Oct. 2, 2015) ................................................... *passim*

*Kornell v. Haverhill Ret. Sys.*,
　790 Fed. App'x 296 (2d Cir. Nov. 1, 2019) ........................................................... 17

*Lynn's Food Stores, Inc. v. United States*,
　679 F.2d 1350 (11th Cir. 1982) ............................................................................. 13

*Malchman v. Davis*,
　706 F.2d 426 (2d Cir. 1983) .................................................................................... 7

*Marshall v. Deutsche Post DHL*,
　2015 WL 5560541 (E.D.N.Y. Sept. 21, 2015) ....................................................... 11

*Masters v. Wilhelmina Model Agency, Inc.*,
　473 F.3d 423 (2d Cir. 2007) ................................................................................... 17

*Morris v. Affinity Health Plan, Inc.*,
　859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................. 7, 24

*Overnight Motor Transp. Co. v. Missel*,
　316 U.S. 572 (1942) ............................................................................................... 26

*Pena v. LeCirque, Inc.*,
　14-cv-7541-FM (S.D.N.Y. Jan. 21, 2016) ............................................................. 29

*Perez v. Merrick Deli & Grocery, Inc. et al.*,
　13-cv-5166-ILG-JO (E.D.N.Y. Apr. 4, 2019) ....................................................... 31

*Picerni v. Bilingual Seit & Preschool Inc.*,
　925 F. Supp. 2d 368 (E.D.N.Y. 2013) .................................................................... 13

*Powers v. Eichen*,
　229 F.3d 1249 (9th Cir. 2000) ............................................................................... 17

*Pucciarelli v. Lakeview Cars, Inc.*,
   2017 WL 2778029 (E.D.N.Y. June 26, 2017) ....................................................... 18

*Puglisi v. TD Bank, N.A.*,
   2015 WL 4608655 (E.D.N.Y. July 30, 2015) ........................................................ 29

*Quow v. Accurate Mech.*,
   2018 WL 3368673 (S.D.N.Y. July 10, 2019) ........................................................ 13

*Reyes v. Altamarea Group, LLC*,
   2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) …………………………………………16

*Reyes v. Buddha-Bar NYC*,
   2009 WL 5841177 (S.D.N.Y. May 28, 2009) ........................................................ 30

*Romero v. La Revise Assocs, L.L.C.*,
   58 F. Supp. 3d 411 (S.D.N.Y. 2014)..................................................................... 14

*Saldana v. Middletown Car-G-Cam Uni Corp.*,
   2015 WL 12591678 (S.D.N.Y. Sept. 23, 2015)....................................................... 9

*Salto v. Alberto's Constr.*,
   *LLC*, 2020 WL 4383674 (S.D.N.Y. July 31, 2020) ............................................... 31

*Sanchez v. JMP Ventures*,
   *LLC*, 2015 WL 539506 (S.D.N.Y. Feb. 10, 2015)............................................ 25, 29

*Sanchez v. Kambousi Restaurant Partners, LLC, et al.*,
   15-cv-05880-CM, Dkt. No. 38 (S.D.N.Y. Sept. 14, 2016) ...................................... 28

*Sand v. Greenberg*,
   2010 WL 69359 (S.D.N.Y. Jan. 7, 2010) ............................................................. 23

*Sandoval v. Materia, Bros., Inc.*,
   2013 WL 1767748 (S.D.N.Y. Mar. 5, 2013) *report and recommendation adopted*,
   2013 WL 1759581 (S.D.N.Y. Apr. 24, 2013)......................................................... 32

*Sierra v. Spring Scaffolding LLC*,
   2015 WL 10912856 (E.D.N.Y. Sept. 30, 2015) .................................................... 14

*Stinson v. City of New York*,
   256 F. Supp. 3d 283 (S.D.N.Y. 2017)................................................................... 10

*Suarez v. Rosa Mexicano Brands Inc.*,
   2018 WL 1801319 (S.D.N.Y. Apr. 13, 2018)....................................................... 23, 28

*Thornhill v. CVS Pharmacy, Inc.*,
   2014 WL 1100135 (S.D.N.Y. Mar. 20, 2014) ............................................................ 16

*Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc., et al*,
   2015 WL 4922961 (S.D.N.Y. June 18, 2015) *report and recommendation adopted,*
   2015 WL 10793126 (S.D.N.Y. Sept. 17, 2015) .......................................................... 22

*Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*,
   14-cv-2636-GWG (S.D.N.Y. Feb. 9, 2018) ................................................................ 31

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..................................................................................... 7, 11

*Wolinsky v. Scholastic, Inc.*,
   900 F. Supp. 2d 332 (S.D.N.Y. 2012).............................................................. 1, 13, 14

*Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*,
   758 F.2d 86 (3d Cir. 1985)......................................................................................... 12

**Rules**                                                                                        **Page(s)**

Fed. R. Civ. P. 23 .................................................................................................... *passim*

**Other Authorities**                                                                            **Page(s)**

2 McLaughlin on Class Actions § 6:24 (8th ed.) ........................................................... 12

4 ALBA CONTE & HERBERT B. NEWBERG, NEWBERG ON CLASS ACTIONS
   § 11.41, at 108 (4th ed. 2002) ................................................................................. 11

Deborah R. Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain
   (2000)....................................................................................................................... 12

William Simon, Class Actions–Useful Tool or Engine of Destruction,
   55 F.R.D. 375 (1973) ............................................................................................... 12

## I.    <u>PRELIMINARY STATEMENT</u>

This wage and hour action brought pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") concerns the claims of Named Plaintiffs, Helen Abraham and Natoya Kerdeane Sylvester ("Named Plaintiffs"), and the thirty-seven opt-in Plaintiffs ("Opt-in Plaintiffs," and together, with Named Plaintiffs, as "FLSA Plaintiffs"), as well as the claims of the Rule 23 New York settlement class ("Rule 23 Plaintiffs," and referred to collectively with FLSA Plaintiffs, where appropriate, as "Plaintiffs" or "Class Members"), against Defendant Promise Home Care Agency, Inc., ("Defendant," and referred to with Plaintiffs as "the Parties"). On April 8, 2020, the Court entered an order granting Plaintiffs' Motion for Preliminary Approval of the Settlement, Certification of Settlement Class, Appointment of Named Plaintiffs as Class Representatives, Appointment of Plaintiffs' Counsel as Class Counsel, and Approval of Proposed Notice of Settlement and Class Action Settlement Procedure (hereinafter "Preliminary Approval Order" and "Preliminary Approval Motion," respectively). *See* Dkt. Nos. 114-116, 121.  Now, on consent of the Parties, Plaintiffs respectfully submit this motion seeking final approval of the class and FLSA settlement pursuant to Federal Rule of Civil Procedure 23(e), *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), and *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012).

For the reasons set forth herein, and upon the annexed Declaration of Michael R. Minkoff, Esq. ("Minkoff Decl."), executed on September 29, 2020, and the Declaration of Jennifer Mills, on behalf of Rust Consulting, Inc. ("Rust"), as Claims Administrator ("Mills Decl."), and all exhibits annexed thereto, and upon all prior pleadings and proceedings had herein, Plaintiffs, on consent of the Parties, respectfully request that the Court grant this motion and enter an Order as follows:

1

1)  Granting final approval of the Settlement Agreement, annexed as **Exhibit A** to the Minkoff Decl.;

2)  Authorizing the distribution of settlement checks to all FLSA Plaintiffs who previously opted-in to this action, and to all Class Members who timely submitted a valid Claim Form and Release ("Claim Form"), representing their respective shares of the Settlement Fund;

3)  Awarding Service Awards to the two Named Plaintiffs in the amount of $15,000.00 each, for a total of $30,000.00, for their service as Class Representatives;

4)  Awarding attorneys' fees in the amount of $319,000.00, for legal services performed in prosecuting and settling the claims in this action, to Borrelli & Associates, P.L.L.C. as Class Counsel;

5)  Awarding $1,855.11 for costs and out-of-pocket expenses to Class Counsel;

6)  Awarding $17,770.00 for claims administration fees and costs to Rust Consulting, Inc., the court-appointed Claims Administrator in this matter ("Rust");

7)  Providing for the release of all claims as specified in the Settlement Agreement by all Class Members who did not properly and timely opt-out of the settlement (of whom there were only two); and

8)  Dismissing this action against Defendant with prejudice, but with the Court's continued jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' settlement, as well as over the administration and distribution of the settlement fund.

## II.   BACKGROUND

### A.   Procedural History, Named Plaintiffs' Allegations, Discovery, and Mediation

For a complete recount of the procedural history of this action, the Named Plaintiffs' allegations, the discovery exchanged in this action, and the negotiations through which the Parties agreed to the proposed settlement of the collective and class action now before the Court, Plaintiffs respectfully refer the Court to the section of their Preliminary Approval Motion addressing same. *See* Dkt. No. 115, § II-III, at 13-26.

B.    **Order Granting Preliminary Approval of Settlement**

In its April 8, 2020 Preliminary Approval Order, the Court certified two separate classes, contingent upon and for the purposes of settlement only. *See* Dkt. No. 121, ¶ 3. Additionally, *inter alia*, the Court approved the Parties' proposed Notice of Class Action Settlement ("Rule 23 Notice" or "Notice") and Reminder Notice ("Reminder") following modifications directed by the Court and completed by Class Counsel. *See id.*, ¶ 8. The Order additionally appointed Rust as the Claims Administrator in this action, and required Rust to send the Notice to Class Members by June 1, 2020, and to later send the Reminder by July 14, 2020, with any Claim Forms, opt-out statements, or objections to be received by on or before August 31, 2020. *See id.*, ¶¶ 9-13. The Court's Order also scheduled a briefing schedule for this motion and a fairness hearing to be held on November 30, 2020, at 4:00 p.m. *See id.*, ¶¶ 17-18.

Following the Court's Order granting preliminary approval, the Parties made minor modifications to the Settlement by way of a stipulation, which the Court approved and So Ordered on April 15, 2020, Dkt. No. 123, redefining the Class Period to between January 1, 2015 and April 19, 2020, and modifying the settlement formula to reflect this change.

C.    **Claims Administration**

Again, the parties jointly selected and the Court in its Preliminary Approval Order appointed Rust to administer the settlement. *See* Mills Decl., ¶ 3. Rust received the Court-approved Notice from the Parties on April 9, 2020, which Rust formatted and with which it included a postage pre-paid, pre-addressed return envelope, which together comprised the Notice Packets to be sent to Class Members via First Class Mail and email. *See* Mills Decl., ¶ 7. The Notice Packets advised Class Members of their right to be included in the Settlement, their right to submit claim forms to receive their settlement shares if they had not already opted-in to the

action, their right to opt-out of the Settlement, their right to object to the Settlement, and the implications of each such action. *See* Mills Decl., ¶ 10.  The Notice Packets additionally advised Class Members of the applicable deadlines and pertinent events, including the date and location of the Fairness Hearing, the approximate amount that each Class Member would receive from the settlement, and how Class Members could obtain additional information. *See* Mills Decl., ¶ 10.  A sample Rule 23 Notice Packet is attached to the Mills Decl. as **Exhibit A**.

On April 30, 2020, Defendant's counsel provided Rust with a list (hereinafter, the "Class List") containing the names, and if available, last known mailing, email addresses, and phone numbers of all of the 480 Class Members. *See* Mills Decl., ¶ 8.  The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the United States Postal Service ("USPS"). *See* Mills Decl., ¶ 9.  The NCOA contains changes of address information filed with the USPS.  In the event that any individual had filed a USPS change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packet. *See* Mills Decl., ¶ 9.

On June 5, 2020, Rust mailed the Notice Packets via First Class Mail and email to all 480 Class Members contained in the Class List. *See* Mills Decl., ¶ 10.[1]  However, the settlement formula listed in the June 5th Notice Packets was inadvertently incorrect, failing to incorporate the changes made to the Parties' settlement formula following the Court's changes to the original notice, and the changes made by way of stipulation.  While the estimated individual settlement shares *were* calculated correctly (i.e., using the correct formula and correct Class Period), the

---

[1] The Notice mailing was slightly delayed beyond the Court's June 1, 2020 deadline due to complications arising out of ensuring accurate calculations for each individual Class Member's estimated settlement share. As a result, the Bar Date for submission of claim forms, opt-out statements, or objections was also pushed back from August 31, 2020 to September 3, 2020. *See* Minkoff Decl., ¶ 15; Mills Decl., ¶ 11.

4

Parties nevertheless directed Rust to mail a correction letter to the Class, advising them of the error regarding the written formula, and noting that their estimated individual settlement share calculations were unchanged, which Rust sent by U.S. Mail and email on June 17, 2020. *See* Mills Decl., ¶ 11. On July 14, 2020, Rust sent 450 Reminders via U.S. Mail, as well as via email and text message for those Class Members for whom Defendant retained email addresses and phone numbers. *See* Mills Decl., ¶ 12.[2]

Of the 480 Notice Packets mailed, a total of 197 were returned as undeliverable by the USPS. *See* Mills Decl., ¶ 13. Rust then used the Class Member's name, previous address, and social security number, if one was available, to try and obtain a current mailing address for those undeliverable Notice Packets. *See* Mills Decl., ¶ 13. Through the 197 advanced address searches conducted, Rust was able to locate 156 updated addresses and promptly mailed Notice Packets to those updated addresses. *See* Mills Decl., ¶ 13. Of these 156 re-mailed notices, 108 were again returned as undeliverable, which when combined with the forty-one original undeliverable notices, yields 149 Class Notices which were not successfully sent by USPS. *See* Mills Decl., ¶ 15. Thereafter, Rust received twenty requests to re-mail the Class Notice, which Rust promptly re-mailed to an updated address. *See* Mills Decl., ¶ 14. While 149 Notices were unsuccessfully mailed, Rust successfully sent ninety-seven of those Notices via email, text message, or both. *See* Mills Decl., ¶ 15. As a result, as of September 23, 2020, Rust successfully mailed, emailed, or texted 428 out of the 480 notices to Class Members, leaving a maximum of fifty-two undelivered Notices. *See* Mills Decl., ¶ 16. Moreover, an additional two of these fifty-two undelivered notices were recently returned to Rust by the USPS with yet another forwarding address, which Rust

---

[2] Rust did not send a Reminder to the individuals who had already participated in, or excluded themselves from, the Settlement.

promptly used to re-mail for a second time these two Notices, and for whom the Parties will agree to permit Rust to accept any submissions therefrom, even though such submissions may be sent after the bar date. *See* Mills Decl., ¶ 16.  Finally, Defendant has consented to sharing with Class Counsel the contact information of the fifty-two Class Members who may not have received notice from Rust, and Class Counsel has sent out thirteen additional notices to fresh addresses that Class Counsel was able to obtain using an advanced Westlaw "PeopleMap" search tool. *See* Minkoff Decl., ¶ 16.  Class Counsel will continue to attempt to locate additional address for the Class Members who may not have received the Notice, and Defendant has consented to permit their inclusion should they submit Claim Forms up until the Fairness Hearing. *See* Minkoff Decl., ¶ 16. Thus, to date, it appears as though only thirty-seven Class Members were not ultimately located just yet, for a total undeliverable rate of approximately 7.7%, and a successful delivery rate of 92.3%. *See* Mills Decl., ¶ 15 (noting 89.2% success rate prior to Class Counsel's efforts to locate additional addresses); Minkoff Decl., ¶ 16.

As detailed in Named Plaintiffs' Preliminary Approval Motion, the Gross Settlement Fund totals $1,100,000.00, with the Net Settlement Fund available to Class Members, of course subject to Court-approval of each item requested below, amounting to $731,374.90. *See* Minkoff Decl., ¶ 10.  Between sending the Notice Packets and Reminders, and the close of the claim-submission period on September 3, 2020, in total, Rust received 100 valid Claim Forms. *See* Mills Decl., ¶ 17. Since that date, at least two additional individuals have submitted Claim Forms, both of whom Defendant consents to include as Participating Claimants. *See* Minkoff Decl., ¶ 16.  In addition to these 102 Participating Claimants, the original thirty-seven Opt-in Plaintiffs are automatically eligible to receive settlement shares upon final approval, thereby also becoming Participating Claimants.  As a result, excluding twenty overlapping claimants, a total of 117 Class Members are

participating in the Settlement, claiming a total of $218,151.20 of the Net Settlement Fund. *See* Mills Decl., ¶ 19. As of this date, Rust has received only two requests for exclusion from the Settlement - - Matilda Oyeyemi and Sawson Speede - - and received zero objections. *See* Mills Decl., ¶¶ 21-22. The average award is $1,833.20 per Class Member and the highest award is anticipated to be $13,252.12. *See* Mills Decl., ¶ 19. The breakdown of the Net Settlement Funds are detailed in the Minkoff Declaration and Mills Declaration.

## III.    ANALYSIS

### A.    The Rule 23 Class Action Settlement is Fair, Adequate, and Reasonable

Federal Rule of Civil Procedure 23(e) requires court approval for a class action settlement to ensure that it is "fair, adequate, and reasonable, and not a product of collusion." *Romero v. La Revise Assocs., LLC*, 58 F. Supp. 3d 411, 420 (S.D.N.Y. 2014) (Gorenstein, *J*.) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)). When analyzing 23(e), courts "consider both procedural and substantive fairness." *Id*. (citing *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474 (S.D.N.Y. 2013)); *accord Kochilas v. Nat'l Merchant Servs., Inc.*, 2015 WL 5821631, at *3 (E.D.N.Y. Oct. 2, 2015). More specifically, a court "must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citation omitted).

As explained in detail below, because this settlement is fair, reasonable, and adequate, the Court should approve it.

### 1.    Procedural Fairness

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 617-18 (S.D.N.Y. 2012) (citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *accord*

*Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 99 (E.D.N.Y. 2015) (collecting cases).   In assessing the procedural fairness of a class settlement, courts favor "early settlement of class actions, when warranted." *Donnelly v. Peter Luger of Long Island, Inc.*, 2014 WL 12769046, at *4 (E.D.N.Y. Nov. 13, 20104) (collecting cases).   As this Court has previously noted, "[t]here is a presumption of procedural fairness as to a proposed class settlement where that settlement is 'reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *Romero*, 58 F. Supp. 3d at 420 (quoting *McReynolds v. Richards–Cantave*, 588 F.3d 790, 803 (2d Cir. 2009)).

Here, as thoroughly explained in Named Plaintiffs' Preliminary Approval Motion, the process leading up to settlement strongly indicates procedural fairness.   Indeed, although this settlement was reached before the filing of a motion for Rule 23 class certification, the Parties litigated this case extensively, with Class Counsel having, *inter alia*, conducted the following tasks: investigated the Named Plaintiffs' and Opt-in Plaintiffs' claims and Defendant's defenses thereto; participated in an all-day, though unsuccessful, mediation with Named Plaintiffs and Defendant's Chief Executive Officer, Godfrey Echendu, all present; engaged in adversarial discovery and motion practice for conditional certification, which this Court granted following oral argument; disseminated notice of pendency to the putative members of the collective; thereafter exchanged thousands of pages of discovery and electronically stored information aimed at the viability of class certification and possible settlement; exchanged information relevant to the claims and potential damages of all Class Members; and conducted many telephonic interviews with the Named Plaintiffs and Opt-in Plaintiffs concerning the relevant information of their employment, giving the Parties more than sufficient information to determine the reasonable range of settlement on a class-wide basis at this stage. *See generally,* Dkt. No. 115, at 14-17.   As

mentioned above, prior to the Court granting conditional certification, the Parties participated in an all-day, in-person private mediation on March 25, 2019, with Roger Briton, Esq. - - an experienced employment and labor law mediator and litigator and a member of this District's mediation program - - for which both Named Plaintiffs flew in to New York from their homes in Texas, and during which the Parties were unable to resolve this matter, leading this Court to hold oral argument on, and ultimately grant, conditional certification, further exemplifying the fairness of the procedure leading to settlement. *See Saldana v. Middletown Car-G-Cam Uni Corp.*, 2015 WL 12591678, at *1 (S.D.N.Y. Sept. 23, 2015) (citation omitted) (recognizing that a presumption of fairness "is increased when a settlement is reached with the assistance of an experienced mediator").

Based on these factors, and the procedural history extensively addressed in seeking and obtaining preliminary approval from the Court, as well as the fairness of the settlement procedure that the Court endorsed in its Preliminary Approval Order, procedural fairness is unquestionably satisfied.

### 2.    <u>Substantive Fairness</u>

In addition to being procedurally fair, the Rule 23 Settlement also satisfies the substantive fairness factors that courts in this Circuit apply when determining whether final approval of a class action settlement is appropriate. *See Beckman*, 293 F.R.D. at 474 (citing *Grinnell*, 495 F.2d at 463). More specifically, in *Grinnell*, the Second Circuit held that courts should consider the following factors when evaluating a class action settlement for final approval:

> (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the state of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of

> reasonableness of the settlement fund in light of the best possible
> recovery; and (9) the range of reasonableness of the settlement fund
> to a possible recovery in light of all the attendant risks of litigation.

495 F.2d at 463 (citations omitted), *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000).  Here, Plaintiffs refer the Court to their evaluation of the *Grinnell* factors in Named Plaintiffs' Preliminary Approval Motion (*see* Dkt. No. 115, at 31-39), with the exception of the "reaction of the class to the settlement," which can obviously only be evaluated following notice to the class and which is now addressed.

As to that factor, "[i]t is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Chavarria v. N.Y. Airport Serv., LLC*, 875 F. Supp. 2d 164, 173 (E.D.N.Y. 2012) (citation omitted).  It is also settled that "for due process to be satisfied, not every class member need receive actual notice [of the class settlement], as long as class counsel 'acted reasonably in selecting means likely to inform persons affected.'" *See Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 248-49 (E.D.N.Y. 2010) (quoting *In re Adelphia Commc'ns Corp. Sec. Litig.*, 271 Fed. App'x 41, 44 (2d Cir. 2008)) (alterations in original) (finding notice reasonable and comporting with due process when 29.92% of 922,316 person class never received actual notice).  Indeed, "notice sent by mail to the last known address of the absent class member meets the due process requirement of notice through 'reasonable effort' even where numerous class members have since changed addresses and do not receive notice.'" *Stinson v. City of New York*, 256 F. Supp. 3d 283, 290 (S.D.N.Y. 2017) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 164 F.R.D. 362 (S.D.N.Y. 1996)) (collecting cases); *see also, e.g., Hernandez*, 306 F.R.D. at 97 (approving as fair and reasonable notice mailed to only 109 out of 150 putative FLSA/NYLL class members, for which only 14.6% returned claim forms to become participating claimants, and granting final approval); *Alleyne v. Time Moving &*

*Storage, Inc.*, 264 F.R.D. 41, 46-47 (E.D.N.Y. 2010) (in FLSA/NYLL class settlement, approving notice as fair with 16.47% undeliverable rate in 352-member class and granting final approval); *Gonzalez v. City of New York*, 396 F. Supp. 2d 411, 418 (S.D.N.Y. 2005) (finding mailings reaching only one-third of potential class, "even without supplemental newspaper publications" constituted adequate notice); *In re W. Union Money Transfer Litig.*, 2004 WL 3709932, at *14 (E.D.N.Y. Oct. 19, 2004) (approving settlement where undeliverable notice rate was 45% because of "the length of the class period, the size and mobility of the Settlement Class, and the likelihood that some name and address information may not have been accurately provided or entered at the time").

The Second Circuit has also emphasized that "[i]f only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (citation omitted).  Indeed, this Court has found that six opt-outs out of a class of 486 potential class members - - strikingly similar to the 480-member Class here - - "indicates the class's general approval of the Settlement Agreement." *Romero*, 58 F. Supp. 3d at 420 (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y.2008)); *see also Hernandez*, 306 F.R.D. at 100 (finding "[t]he fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness") (internal quotations omitted); *accord Kochilas*, 2015 WL 5821631, at *5 (same); *see also Marshall v. Deutsche Post DHL*, 2015 WL 5560541, at *5 (E.D.N.Y. Sept. 21, 2015) (finding that reaction of the class favors settlement when "[n]ot a single member of the class objected to settlement, and only one class member has opted out of the class").

Again, in *Romero*, this Court found that where six out of 486 class members opted out and zero objected, this indicated "the class's general approval" of the settlement. 58 F. Supp. 3d at 420. In *Viafara v. MCIZ Corp.*, involving multiple overlapping classes, the court found that seven opt-

outs of a 387-member class and twenty-five opt-outs in a 1,224 class both represented a "favorable response demonstrat[ing] that the classes approve of the Settlements and supports final approval." 2014 WL 1777438, at *6 (S.D.N.Y. May 1, 2014).  In *Hernandez* the court found the second *Grinnell* factor to strongly weigh in favor of approval where the participation rate of 14.6% was "within the average range." 306 F.R.D. at 100 n.8 (citing 2 McLaughlin on Class Actions § 6:24 (8th ed.) and observing that class action settlements based on claims submission "typically have a participation rate in the 10-15 percent range"); *see Zimmer Paper Prods. Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 92 (3d Cir. 1985) (approving class action settlement where only 12% of the class submitted a claim form); *see also* Deborah R. Hensler et al., Class Action Dilemmas: Pursuing Public Goals for Private Gain 9–37 (2000) ("It was estimated that somewhere between 14 and 33 percent of all eligible consumers filed claims in the Levi Strauss suit"); William Simon, Class Actions–Useful Tool or Engine of Destruction, 55 F.R.D. 375, 379 (1973) ("Even after a settlement, where class members are notified that they can share in the recovery merely by filing a simple proof of claim, only 10% to 15% bother to do so").

Here, between Rust and Class Counsel, at least 428 and potentially as many as 443 out of the 480-person Class received notice of the instant settlement; a mere two Class Members opted-out; and zero submitted objections - - which,  all together, overwhelmingly indicates the settlement's fairness and recommends final approval.  Furthermore, at least eighty new Class Members submitted Claim Forms out of the 443 Class Members who had not previously opted-in to this action before settlement, which when combined with the original thirty-seven Opt-in Plaintiffs and when removing duplicate submissions, represents a total of 117 Class Members, amounting to a 24.38% participation rate to date, a positive result consistent with typical class action settlements.  Indeed, fully informed of the approximate amount that each Class Member

would receive and the option for all Class Members to opt-out from the settlement, only two Class Members - - 0.41% of the Class - - elected to do so and no one objected. This *Grinnell* factor, as well as all other *Grinnell* factors, solidly supports approval and overwhelmingly indicates the settlement's fairness.

Moreover, the average individual settlement share here - - $1,846.68 - - is on the higher end of the spectrum as compared to typical FLSA settlement awards, further supporting the settlement's substantive fairness. *See, e.g., Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206-07 (2d Cir. 2015) (quoting *Picerni v. Bilingual Seit & Preschool Inc.*, 925 F. Supp. 2d 368 (E.D.N.Y. 2013)) ("noting that FLSA cases tend to settle for between $500 and $2000 dollars in unpaid wages.").

### B.      The Court Should Approve the Settlement of the FLSA Claims

In addition to Rule 23 settlements, settlements of FLSA claims also usually require court approval. *Cheeks*, 796 F.3d at 206-07. The standard "for approval of an FLSA settlement is lower than for a Rule 23 settlement" because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 Settlement. *Quow v. Accurate Mech.*, 2018 WL 3368673, at *4 (S.D.N.Y. July 10, 2018) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Azogue v. 16 for 8 Hospitality LLC*, 2016 WL 441422, at *5 (S.D.N.Y. Aug. 19, 2016) (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* at *5 (citation omitted).

In evaluating a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky*, 900 F. Supp. 2d at 335, and which the Second Circuit has recently endorsed. *Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020). The *Wolinsky*

13

factors consider: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335.

Here, because the factors required for approval of a Rule 23 settlement are more extensive, and indeed inclusive of those required for approval of a settlement of FLSA claims, and because Named Plaintiffs addressed these factors in the Preliminary Approval Motion, Named Plaintiffs do not separately discuss each FLSA factor here. *See, e.g., Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 422 (S.D.N.Y. 2014). As argued in Named Plaintiffs' Preliminary Approval Motion, the "settlement was a result of contested litigation and arm's length negotiation." *Kochilas*, 2015 WL 5821631, at *7. The Court should approve it under *Cheeks* and *Wolinsky*.

### C.   Service Awards

"Service awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs." *Hernandez*, 306 F.R.D. at 101 (citation omitted). Indeed, "[i]t is important to compensate plaintiffs for the time they spend and the risks they take." *Id*.; *see Sierra v. Spring Scaffolding LLC*, 2015 WL 10912856, at *9 (E.D.N.Y. Sept. 30, 2015) (approving service awards of $10,000 and $7,500 to plaintiffs).

Here, Named Plaintiffs Abraham and Sylvester each seek service awards of $15,000.00 for a combined total of $30,000.00. While they have not appeared for depositions, they have nevertheless vigorously pursued the interests of the Class, and for purposes of settlement, their

14

interests and the class are aligned. Indeed, Named Plaintiffs were instrumental in the investigation and analysis of the vital facts relevant to the Class's claims, as well as the defenses that Defendant raised throughout the course of the litigation. At the outset of the case, Named Plaintiffs provided critical information and documents allowing Class Counsel to efficiently move for conditional certification. Both Named Plaintiffs also attended the Parties' March 25, 2019 mediation - - going so far as to book and pay for flights to New York from Texas (where they moved after they stopped working for Defendant), cancel those flights and lose the money spent on them, and ultimately reschedule new flights to accommodate Defendant's original need to reschedule the mediation, all to participate as Class Representatives. They were also fully prepared to fly back, if needed, for subsequent mediations, depositions, or an eventual trial.

Named Plaintiffs also participated in the lead-up to mediation by providing facts and evidence to rebut Defendant's claimed misclassification exemptions - - both as to the independent contractor and professional exemption defenses - - and Defendant's alleged payroll manipulation with respect to rates of pay. They also remained actively involved throughout the litigation and negotiation process, conferring with Class Counsel regularly regarding next steps and strategy. Compared to many approved employment class action service awards, the service award requested here is modest, representing only 2.72% of the total settlement fund. *See, e.g.*, *Johnson v. Brennan*, 2011 WL 4357376, at *2 (S.D.N.Y. Sept. 16, 2011) (awarding service awards of $10,000.00 each to four plaintiffs for a total of $40,000.00, totaling 9.1% of the $440,000.00 FLSA/NYLL settlement). Importantly, the Class Members were notified of the exact amount of the service awards to Named Plaintiffs in the Notice, and again, there were no objections and only two opt-outs, showing support for the awards. This supports approval of the service award sought here. *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 298 (E.D.N.Y. 2015)

(approving service award and noting that "not one class member objected to the service award");

*see also Reyes v. Altamarea Group, LLC*, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011)

(awarding total of $50,000.00 in service awards in $300,000.00 class settlement - - including three

$15,000.00 awards); *Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011)

(granting multiple service awards - - one of $30,000.00, two $15,000.00 awards, and a $7,500.00

award - - for a combined total of $67,500.00); *Torres v. Gristede's Operating Corp.*, 2010 WL

5507892, at *8 (S.D.N.Y. Dec. 21, 2010) (awarding $15,000.00 service awards to fifteen separate

plaintiffs, in addition to other awards).

  In light of these considerations, the service awards here are fair and reasonable and

Plaintiffs respectfully request that the Court approve them.

  **D.**  <u>**Attorneys' Fees**</u>

    **1.**  **The Percentage Method is the Preferred Method for Awarding**
       <u>**Attorneys' Fees in Common Fund Cases in this Circuit**</u>

  When a common fund is created as part of a settlement, the Second Circuit has recently

reaffirmed that "the percentage method has the advantage of aligning the interests of plaintiffs and

their attorneys more fully by allowing the latter to share in both the upside and downside risk of

litigation." *See Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 925 F.3d

63, 71 (2d Cir. 2019) (citation omitted); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at

*3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Still, to assess the reasonableness of a requested fee, courts usually "[a]pply[] the lodestar method

as a cross check." *See Fresno Cnty. Employees' Ret. Ass'n*, 925 F.3d at 72 (citing *Goldberger*, 209

F.3d at 50) ("district courts should use the lodestar as a 'baseline' against which to cross-check a

percentage fee").  Notably, "[a]lthough the Court has discretion to award attorneys' fees based on

the lodestar method or percentage-of-recovery method, in wage and hour class action lawsuits,

public policy favors a common fund attorneys' fee award." *Azogue*, 2016 WL 4411422, at *6 (citation omitted).

> a.    *The Second Circuit recently found percentage of the gross settlement fund, rather than percentage of fund net expenses to be <u>fair and reasonable.</u>*

In *Kornell v. Haverhill Ret. Sys.*, 790 Fed. App'x 296, 298-99  (2d Cir. 2019), the Second Circuit, in a summary order, weighed the issue of calculating attorneys' fees in a class action settlement.  Specifically, the court considered whether such fees should be calculated based on a percentage of the gross settlement fund, or based on the settlement fund *net* of expense, and determined that the district court did not abuse its discretion by awarding class counsel a percentage based upon the ***gross*** settlement fund. *Id*. (emphasis added).  Noting that the touchstone in an attorneys' fee award analysis was reasonableness, the court held that because Federal Rule of Civil Procedure 23(h) does not bar one method or the other, "[a] district court has discretion to award Class Counsel a percentage of the gross class action settlement fund, provided that its award of attorneys' fees is reasonable." *Id*. (citing *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000)); *see also Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (explaining that a district court can avoid a "windfall" by adjusting the percentage awarded in order to come up with a fee it deems reasonable in light of the *Goldberger* factors).

Moreover, the Second Circuit also recently clarified that "[w]hile in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by district courts in evaluating fee requests, *see Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit." *Fisher*, 948 F.3d at 600.  Here, the requested fee of 29% of the gross settlement fund

- - below the typical requested fee of one-third - - does not result in a windfall to Class Counsel. Instead, it represents a reasonable multiplier of 2.37. Because the Second Circuit has approved of this method of calculation in situations where the *Goldberger* factors support plaintiffs' counsel's requested fee award, Class Counsel submits that 29% of the gross settlement fund is reasonable in this matter. That no one objected and that only two individuals have opted out further supports this, warranting Court approval.

> b.    *The Goldberger Factors Support an Award of 29% of the Gross Fund Created*

"Reasonableness is the touchstone for determining attorneys' fees." *Asare*, 2013 WL 6144764, at *18. It is well-established law that "[t]o determine whether a fee is reasonable, courts look to the factors identified by the Second Circuit in *Goldberger*." *Siddiky v. Union Square Hospitality Grp., LLC*, 2017 WL 2198158, at *9 (S.D.N.Y. May 17, 2017) (citing *Goldberger*, 209 F.3d at 50). Those factors are: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Id*. at 50. "Once that initial computation has been made, the district court may, in its discretion, increase the lodestar by applying a multiplier based on other less objective factors, such as the risk of the litigation and the performance of the attorneys." *Pucciarelli v. Lakeview Cars, Inc.*, 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) (citation omitted).

In the present case, all of the *Goldberger* factors weigh in favor of awarding Plaintiffs' counsel its requested fees of 29% of the gross settlement fund.

> i.    *The Firm's Time and Labor*

Class Counsel, Borrelli & Associates, P.L.L.C. ("B&A" or "the Firm"), spent significant effort to obtain the $1,100,000.00 settlement fund. As the Court well-knows, the parties engaged

in substantial discovery and motion practice, attended several hearings before this Court, conducted a private mediation, and engaged in additional settlement-focused discovery following the Court's order granting conditional certification and Class Counsel disseminating notice of pendency.  As the Court is also aware, in addition to substantial work leading up to and securing the settlement in principle in this matter, there was additional and voluminous work to be done finalizing the class settlement agreement, drafting the Preliminary and Final approval motions, responding to and addressing the Court's concerns relating to the formula used to calculated Class Members' individual settlement shares, working with the Claims Administrator to administer the settlement, and responding to inquiries from numerous Class Members.

In performing the above tasks, B&A expended approximately 466.50 hours of attorney and paralegal time in this matter as of September 28, 2020, including billable and nonbillable hours, which were recorded by contemporaneously maintained time records and which produces an aggregate lodestar of $134,735.90.[3]  Moreover, the requested fee is not based solely on time and effort already expended; it is also meant to compensate the Firm for time that it will be required to spend in its continued efforts administering the settlement post submitting the instant Motion, after final approval, and responding to further inquiries from Class Members. *See Beckman*, 293 F.R.D. at 481 (noting that "[i]n wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and sometimes litigating disagreements with defendants about administering the settlement and distributing the fund.").  For example, the Firm will need to oversee and monitor the payment to the Class Members by the Claims Administrator,

---

[3] The requested rates used for this calculation are explained below and in the Minkoff Decl., ¶¶ 30-31, 36-37, 42-43, 47-48, 51, and 53.

deal with any issues of late payment or late cashed checks, and potentially respond to inquiries from the Class Members or the administrator. Thus, the Firm's lodestar will only increase.

ii.    *The Magnitude and Complexities of the Litigation*

"In evaluating the second *Goldberger* factor, '[t]he size and difficulty of the issues in a case are significant factors to be considered . . .'" *Hall*, 2016 WL 1555128, at *15 (quoting *Sukhnandan*, 2014 WL 3778173, at *10). "To that end, among FLSA cases, the most complex type is the hybrid action brought here, where state wage and hour violations are brought as an opt out class pursuant to Rule 23 in the same action as the FLSA opt in collective action pursuant to 29 U.S.C. § 216(b)." *Id*. (internal quotations omitted).

In *Bijoux v. Amerigroup N.Y., LLC*, 2016 WL 2839797, at *1 (E.D.N.Y. May 12, 2016), the court awarded one-third of the total gross settlement fund in attorneys' fees as "justified by the work that Class Counsel did negotiating the settlement and conducting the litigation, the ultimate recovery, and the risk that Class Counsel undertook in bringing the claims." In the present action, the Firm pursued and secured a class-wide settlement on behalf of 480 people, with 115 individuals set to receive settlement payments, with the additional wrinkle of Defendant's dual misclassification defenses - - both pertaining to claimed independent contractors, and the professional exemption - - potentially limiting any recovery for the Class Members if Defendant's defenses carried the day, *see* Dkt. No. 155 at, *e.g.*, 12, 14, 32, 35, securing a $1,100,000.00 settlement fund, to which there were no objections and only two requests for exclusion. The Firm seeks only 29% of the gross fund, less than the customary fee of one-third. This factor supports the Firm's requested fee.

iii.    *The Risk of Litigation*

Also previously discussed in connection with Named Plaintiffs' Preliminary Approval motion, the risk of litigation, taking into account the settlement result, warrants the Firm's

20

requested fee award. Indeed, "[d]espite the most vigorous and competent of efforts, success is never guaranteed." *Grinnell*, 495 F.2d at 471. This is even truer today with the added uncertainty arising out of the COVID-19 pandemic, further warranting fully and finally settling this matter once and for all before any potential "second wave" or other complications may arise (though of course hopefully not) in the not-too-distant future. Class Counsel's efforts will ensure meaningful settlement funds reach the Class Members in a time of great economic uncertainty. While the pandemic did not spread until after the Parties resolved this matter, it looms in the background as a potential risk factor should the Court decline to grant final approval of the settlement and restore the parties to the *status quo ante*.

Here, Class Counsel should be rewarded for securing this settlement despite the risks assumed, as the Firm undertook the matter on a contingency basis, *see* Minkoff Decl., ¶ 22, and achieved a settlement following substantial time and effort undertaken in this matter, including substantial discovery, motion practice, disseminating notice after conditional certification, conducting a comprehensive class-wide damage analysis, participating in mediation, and ultimately settling the case after post-conditional certification discovery and negotiations. *Siddiky*, 2017 WL 2198158, at *4. Additionally, the Firm "risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation." *Kochilas*, 2015 WL 5821631, at *9.

Based on the reasonableness of the award in light of the significant risk, the Firm achieved an excellent result. This third *Goldberger* factor weighs in favor of the Firm's requested fee award.

### iv.     *The Quality of the Representation*

"To determine the quality of the representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Hall*, 2016 WL 1555128, at *15; *see Bijoux*, 2016 WL 2839797, at *1 (awarding one-third of the gross fund in attorneys' fees and noting that class counsel were "experienced class action employment lawyers

with good reputations among the employment law bar"). "The quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55.

In the present case, "Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of the litigation." *Asare*, 2013 WL 6144764, at *21. Indeed, based on the results achieved and the Class Members' favorable reaction, it is clear that the "diligent work performed by Class Counsel in litigating and settling this matter demonstrates their commitment to the Class Members and their interests." *Id.*

B&A has been appointed Class Counsel in several other similar matters based upon the Firm's experience, as of five years ago, "prosecut[ing] over one thousand cases in state and federal court, the large majority of which are employment actions," which number has substantially increased since. *Vivaldo v. United Talmudical Acad. of Kiryas Joel, Inc., et al*, 2015 WL 4922961, at *5 (S.D.N.Y. June 18, 2015), *report and recommendation adopted,* 2015 WL 10793126 (S.D.N.Y. Sept. 17, 2015). Recent cases that courts have appointed B&A as class counsel are listed in the Minkoff Declaration, ¶ 15. This factor strongly weighs in favor of the Firm's requested fee award.

*v.* <u>The Requested Fee in Relation to the Settlement</u>

The Second Circuit recently held in *Fisher* that "[n]either the text nor the purpose of the FLSA . . . supports imposing a proportionality limit on recoverable attorneys' fees." 948 F.3d at 603 (finding that "[b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high"). Nonetheless, should this Court still analyze the proportion of Class Counsel's requested fee as compared to the Gross Settlement Fund (or even the amount of the Net Settlement Fund claimed

22

by Class Members), courts do so to ensure that the percentage awarded does not constitute a "windfall." *Asare*, 2013 WL 6144764, at *21.  Under the Settlement Agreement here, the Parties agreed that, subject to Court approval, Class Counsel would receive $310,000.00 as attorneys' fees, representing 29% of the total Gross Settlement Fund.  Again, this is a lower fee than what courts - - including this one - - have approved in other wage and hour hybrid class and collective cases within the Second Circuit, all of which are pre-*Fisher*. *See Suarez v. Rosa Mexicano Brands Inc.*, 2018 WL 1801319, at *1-*2 (S.D.N.Y. Apr. 13, 2018) (Gorenstein, *J.*) (awarding 33.33% attorneys' fee of $1,200,000.00 in a $3,600,00.00 settlement, amounting to a 4.62 multiplier, in a claims-made, reversionary settlement for restaurant workers); *id.*, Dkt. No. 76 at 37 (describing 4.6 multiplier request therein); *see also Bijoux*, 2016 WL 2839797, at *1.  Pre-*Fisher*, Class Counsel's requested 29% was still arguably *below* the standard in this Circuit for a class settlement. *See e.g.*, *Kochilas*, 2015 WL 5821631, at *8 (awarding one-third of the settlement fund as "consistent with the norms of class litigation in this circuit"); *Lizondro-Garcia v. Kefi LLC*, 2015 WL 4006896, at *10 (S.D.N.Y. July 1, 2015) (awarding one-third fees based on $315,000 settlement with informal discovery).  Thus, the requested fee of 29% of the total fund in a post-*Fisher* and post-*Kornell* world is reasonable in relation to the settlement.

*vi.*    *Public Policy Considerations*

"Fee awards in wage and hour cases are meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Beckman*, 293 F.R.D. at 477 (internal quotations omitted).  "Where relatively small claims can only be prosecuted through aggregate litigation, 'private attorneys general' play an important role." *Kochilas*, 2015 WL 58216, at *8 (internal quotations omitted).  "Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and the NYLL." *Id*. (collecting cases).

23

In the present matter, Class Counsel agreed to assume the risk of time, effort, and advanced costs "with no ultimate guarantee of compensation" by representing the Plaintiffs on a full contingency basis. *See* Minkoff Decl., ¶ 22.   The favorable reaction by the Class Members confirms their satisfaction with Class Counsel's result, as the amount of requested attorneys' fees was provided in the Notices, informing the Class Members of the requested fees and their ability to exclude themselves or to object to the settlement if they disagreed or otherwise chose not to participate. *See Azogue*, 2016 WL 4411422, at *7 (approving counsel's request for 33.33% of the Fund, noting fee requested was included in notice to class members, and observing that favorable class reaction "provides support for Class Counsel's fee request"); *Hall*, 2016 WL 1555128, at *15 (collecting cases).

Based on the foregoing, all of the *Goldberger* factors weigh in favor of the requested fee award.

### 2.      The Lodestar Cross-Check Further Supports an Award of One-Third of the Settlement Fund.

#### a.      *The Lodestar Multiplier is Within a Reasonable Range.*

"Courts regularly award lodestar multipliers from 2 to 6 times the lodestar." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (awarding multiplier of 3.04); *see also Bravo v. Palm West Corp.*, No. 14-cv-9193, Dkt. 62 (S.D.N.Y. Mar. 11, 2016) (awarding $500,000.00 fee, representing 3.5 multiplier in FLSA / NYLL class action); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); *Capsolas v. Pasta Res., Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96); *see also, e.g., Toure*, 2012 WL 3240461, at *5 (awarding multiplier of 3.53); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184-186 (W.D.N.Y. 2011) (awarding multiplier of 5.3); *Khait v. Whirlpool Corp.*, 2010 WL 2025106, at *8-10 (E.D.N.Y. Jan. 20, 2010)

(awarding multiplier of 3.3); *Maley*, 186 F. Supp. 2d at 371 (finding "the modest multiplier of 4.65 [ ] fair and reasonable.").

Here, as a cross-check, when calculated pursuant to the lodestar, Class Counsel's attorney's fees as of this submission are $134,735.90 in this matter, representing a 2.37 multiplier. This is well within the range of reasonable multipliers that courts within the Second Circuit approve, as described above. Additionally, as discussed *supra*, Class Counsel's obligation to the Class Members is not over. Indeed, Class Counsel has a continuing obligation to "represent the Class during the settlement approval process and the disbursement phase" although they will not make a supplemental fee application or seek further payment. *Kochilas*, 2015 WL 5821631, at *9. Accordingly, the Firm's lodestar will increase and the requested multiplier will correspondingly decrease.

While Class Counsel submits that a 2.37 multiplier is eminently reasonable, Class Counsel is cognizant that this Court has previously followed the minority view stemming from *Fujiwara v. Sushi Yasuda LTD.*, 58 F. Supp. 3d 424 (S.D.N.Y. 2014), rejecting any fee request above a multiplier of two. *Sanchez v. JMP Ventures, LLC*, 2015 WL 539506, at *5-*6 (S.D.N.Y. Feb. 10, 2015) (Gorenstein, *J.*). Respectfully, Class Counsel submits that *Fujiwara* should not apply to the Court's analysis here. First, *Fujiwara* appeared to arise from a judicial frustration regarding the sheer number of FLSA filings in this District. In this regard, before discussing the merits of *Fujiwara*, that court stated that "[r]ecent years have witnessed an explosion in FLSA litigation. FLSA cases constitute nearly 9% of the civil cases filed in the [S.D.N.Y.] so far this year . . . [n]ationwide, annual FLSA filings are up over 400% from 2001." 58 F. Supp. 3d at 424. But the Second Circuit in *Fisher* has recently and explicitly rejected any notion that FLSA filings should be frowned upon, instead citing both *Cheeks* and the Supreme Court's long-decided *Missel* case,

to highlight how the FLSA is a "uniquely protective statute," *Cheeks*, 796 F.3d at 207, enacted in 1938 "to guarantee workers '[a] fair day's pay for a fair day's work' and to guard against 'the evil of overwork as well as underpay.'" *Fisher*, 948 F.3d at 603. (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942)).

As to the merits, to the extent that *Fujiwara* described all wage and hour cases as "not unduly complex," 58 F. Supp. 3d at 432, the Second Circuit in *Fisher* has also addressed this contention, noting that "[i]n advancing Congress's goals under the FLSA to ensure a 'fair day's pay for a fair day's work,' the law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation." *Fisher*, 948 F.3d at 603 (quoting *Missel*, 316 U.S. at 578). And if *Fisher*'s admonition were insufficient, here, unlike standard wage cases, this matter's complexity, magnitude, and risk are significantly more than that of *Fujiwara*. Indeed, *Fujiwara* consisted of a simple dispute - - restaurant staff seeking unpaid minimum wages during training periods, overtime, spread of hours pay, and tips. 58 F. Supp. 3d at 430. *Fujiwara* did not involve allegations of worker misclassification, which courts commonly recognize are "difficult to prove," *e.g. Beckman*, 293 F.R.D. at 479 n.1 (collecting cases) - - nor did it involve different classes of workers - - here, Registered Nurses ("RNs") and Licensed Practice Nurses ("LPNs"), some of whom were classified as employees, and others still who were classified as independent contractors - - who may well be subject to different standards with respect to any alleged overtime exemptions. *Compare id*. at 435, *with* Pls's Mot. for Prelim. Appr., Dkt. No. 115, at 41, 43, *and* Pls' Reply in supp. of Mot. for Cond. Cert., Dkt. No. 30, at 2-3, 7-10.

Moreover, *Fujiwara* consisted of tipped employees at just one location. 58 F. Supp. 3d at 435. This case, in contrast, involved a class of over 480 workers - - again, some classified as employees, others as independent contractors, and among those some RNs, and others LPNs,

spread out across New York City - - substantially more complex than the single-location *Fujiwara* settlement, or other low-risk and straightforward FLSA/NYLL cases. To continue to litigate, from a procedural perspective, Plaintiffs would have to first convince this Court that the FLSA collective should be finally certified beyond the initial conditional certification already obtained. Plaintiffs would then need to move for Class Certification under Rule 23, and eventually seek summary judgment on at least two exemptions for up to four groups of class members (i.e., RNs and LPNs as both employees and independent contractors). While Plaintiffs believe that they could meet these standards, doing so would require heavily fraught and complex briefing on multiple rounds of motions following full-blown class discovery.

In sum, Plaintiffs' claims here were far from the "home run" that *Fujiwara* described the claims there to be where, for example, "there was no dispute [t]here that the [d]efendants did not pay [p]laintiffs the gratuities left by customers there." *Id*. at 435. And again, should there be any hesitation to depart from *Fujiwara*'s statement that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases," 58 F. Supp. 3d at 439, the Second Circuit in *Fisher* - - albeit not a class case - - affirmatively rejected any "proportionality" considerations in evaluating attorneys' fee awards in FLSA case:

> A proportionality rule would also be inconsistent with the remedial goals of the FLSA . . . [b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on "run of the mill" FLSA cases where the potential damages are low and the risk of protracted litigation high. Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel . . . [T]he law cannot be read to impose a proportional limitation based on the perceived complexities of the litigation.

\* \* \*

27

> While in some cases the proportion of fees may be relevant in considering the reasonableness of an award (for example, the multi-million dollar securities class action involving a common fund, often cited by the district courts in evaluating fee requests, *see Goldberger*, 209 F.3d at 50-51), there is no explicit limit on attorneys' fees in FLSA actions and district courts should not, in effect and practice, implement such a limit. [ ] Even if helpful, however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award.

948 F.3d at 603-05 (internal citations and quotations omitted).

Moreover, even without the Second Circuit's admonitions in *Fisher*, *Fujiwara*'s 2.0 multiplier limit is no longer an accurate representation of what many judges post-*Fujiwara* have granted, including this Court. Indeed, in *Suarez v. Rosa Mexicano Brands Inc.*, this Court awarded a 33.33% attorneys' fee of $1,200,000.00 in a $3,600,00.00 settlement, amounting to a 4.62 multiplier, in a claims-made, reversionary settlement for restaurant workers. *See* 2018 WL 1801319, at *1-*2, *and id.*, Dkt. No. 76, at 37 (describing 4.6 multiplier request therein). Other courts within this District and the Eastern District of New York have also freely departed from *Fujiwara*. For example, Chief District Judge McMahon explained that the range of multipliers awarded in this District for wage and hour settlements still extends up to even 6.3, again, post-*Fujiwara*. *Sanchez v. Kambousi Restaurant Partners, LLC, et al.*, 15-cv-05880-CM, Dkt. No. 38, at 14 (S.D.N.Y. Sept. 14, 2016) (collecting cases).[4]    Judge McMahon also specifically distinguished *Fujiwara* and discussed awarding one-third as attorneys' fees - - a fee higher than the fee Class Counsel requests here - - as follows:

> Unlike in cases that decline to approve one-third of the settlement fund where the obligations 'are relatively clear' and there is 'no dispute' on key factual issues, [*Fujiwara*, 58 F. Supp 3d at 435], here . . . liability and damages were far from clear and would have

---

[4] This decision is attached to the Minkoff Declaration as Exhibit D.

28

> required hundreds of hours of discovery and attorney time to establish. In any event, ***since* Fujiwara*, Courts have continued to follow the trend in this Circuit of awarding one-third (or approximately one-third) of the settlement fund in wage and hour class actions***.

*Id*. at 12 n.4 (citing cases) (emphasis added).

Moreover, other judges in this Circuit have continued to follow the common practice of awarding one-third of the settlement fund in wage and hour actions, including awarding multipliers much higher than two. *See, e.g., Hadel v. Gaucho, LLC*, 2016 WL 3647600, at *1 (S.D.N.Y. June 30, 2016) (granting multiplier of 5); *Pena v. LeCirque, Inc.*, 14-cv-7541-FM, hr'g tr. at pg. 7-8 (S.D.N.Y. Jan. 21, 2016) (granting 4.9 multiplier);[5] *Puglisi v. TD Bank, N.A.*, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving one-third of a $9,900,000 gross settlement fund, representing a 4.8 multiplier, and distinguishing case from, *inter alia*, *Fujiwara*); *Flynn v. N.Y. Dolls Gentlemen's Club*, 2015 WL 3916161, at * 1 (S.D.N.Y. April 28, 2015) (granting 4.5 multiplier); *Ceka v. PBM/CMSI Inc.*, 2014 WL 6812127, at *1 (S.D.N.Y. Dec. 2, 2014) (awarding 3.36 multiplier).

Should this Court nevertheless still consider *Fujiwara*, or the Court's prior decision in *Sanchez*, at *5-*6 (S.D.N.Y. Feb. 10, 2015), when evaluating the instant settlement, the Court should nevertheless recognize that Class Counsel's efficiency in this matter led to an efficient resolution, and as a result the Court should not reduce Class Counsel's fee award. This is because:

> Courts in the Second Circuit tend to grant class counsel a percentage of any settlement, rather than utilize the "lodestar method" (multiplying the hours reasonably expended by a reasonable hourly rate), because the percentage method aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation. The lodestar method, on the other hand, ***disincentivizes early settlements, tempts lawyers***

---

[5] The *Pena* hearing transcript is attached to the Minkoff Declaration as Exhibit E.

> ***to run up their hours***, and "compels district courts to engage in a
> gimlet-eyed review of line-item fee audits."

*Siddiky*¸ 2017 WL 2198158, at *8 (collecting cases) (emphasis added).  Indeed, based on the results

achieved and the Class Members' favorable reaction, it is clear that the "diligent work performed

by Class Counsel in litigating and settling this matter demonstrates their commitment to the Class

Members and their interests." *Reyes v. Buddha-Bar NYC*, 2009 WL 5841177, at *3 (S.D.N.Y. May

28, 2009); *see also Aguilar et al. v. Trolio Landscaping, Inc. et al.*, No. 16-cv-2230, at Dkt. No.

23 (S.D.N.Y. Feb. 16, 2017) (Judge Seibel noting that courts "should not give plaintiffs' lawyers

any incentive to undertake unnecessary discovery or motion practice in a case that can settle

early").  For that reason, here, continued litigation would only serve to increase time, risk, costs,

and attorneys' fees, most likely to the detriment of the Class in light of the settlement that B&A

procured.

    b. *The Firm's rates used to calculate the lodestar are fair and*
      <u>*reasonable.*</u>

  Courts in this District have determined in recent cases that an hourly fee ranging from

$250.00 to $450.00 is appropriate for experienced litigators in wage-and-hour cases." *Lizondro-*

*Garcia*, 2015 WL 4006896, at *7 (collecting cases).  Regarding how Class Counsel calculated the

Firm's lodestar, the rates and experiences of the employees who worked on this matter are

described in the Minkoff Decl., ¶¶ 17-54.  Courts in this District and the Eastern District of New

York have routinely approved these rates in contested wage and hour cases such as this one. *See,*

*e.g., Tejada v. La Selecta Bakery, Inc.*, 17-cv-05882-EK-RER, Dkt. No. 48, Rep. & Rec. Granting

Default Judgment (E.D.N.Y. Sept. 23, 2020) (on a default motion, on which fees were sought

pursuant to the lodestar method, noting rates between $200 and $400 for B&A attorneys "fall

within the range typically approved by this Court . . . [and] find[ing] the requested hourly rates to

be reasonable"); *Salto v. Alberto's Constr., LLC*, 2020 WL 4383674, at *7 (S.D.N.Y. July 31,

2020) (citing *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015)) (on a contested

motion to enforce a settlement agreement and for an award of attorneys' fees incurred with same,

specifically approving B&A's requested hourly rates of $350.00 for Alexander T. Coleman, Esq.,

partner, and $295.00 per hour for lead associate litigating case, and noting same "are reasonable.");

*Sealock v. Covance, Inc.*, 17-cv-05857-JMF, Dkt. No. 283 (S.D.N.Y. Mar. 13, 2020); *In re Murray*

*ex rel. Pryor v. Ambassador Coll. Bookstores, Inc.*, Case No. 2:18-cv-01388-AKT, ECF # 45

(E.D.N.Y. Dec. 13, 2019) ("The thorough and well-reasoned presentation of counsel with regard

to the fairness and reasonableness assessment is persuasive. . . [t]he Court . . . finds that . . . [t]he

hourly rates in this case . . . fall within the range of reasonable rates within the Eastern District of

New York."); *Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60

(E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour

case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here,

and recognizing that that "this Court and the neighboring Southern District of New York have

routinely approved these billing rates for Borrelli & Associates"); *see also Copper v. Cavalry*

*Staffing, LLC et al.*, No. 14-cv-3676, Dkt. No. 255 (E.D.N.Y. Feb. 12, 2018) (approving rates of

$400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per

hour for lead associate attorney, and $90.00 per hour for the Firm's paralegals); *Vivaldo v. United*

*Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (S.D.N.Y. Feb. 9, 2018)

(approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T.

Coleman, $295.00 per hour for lead associate attorney, and $90.00 per hour for the Firm's

paralegals).

Additionally, the party seeking a fee award "has the burden of showing by satisfactory evidence – in addition to the attorney's own affidavits – that the requested hourly rates are the prevailing market rates." *Sandoval v. Materia, Bros., Inc.*, 2013 WL 1767748, at *4 (S.D.N.Y. Mar. 5, 2013), *report and recommendation adopted*, 2013 WL 1759581 (S.D.N.Y. Apr. 24, 2013). Class Counsel meets its burden by providing affidavits from other attorneys practicing employment law in the area attesting to the reasonable of the herein requested rates. *See* Minkoff Decl., ¶ 46, **Exhibit F**.  Class Counsel's contemporaneous billing records are annexed to the Minkoff Decl., ¶ 13, **Exhibit B**.  For the foregoing reasons, Class Counsel's request for $310,000.00, or 29% of the gross settlement fund, is reasonable.

### E.    Litigation Expenses

Counsel should be awarded expenses that are "necessary and were directly related to the results achieved." *Siddiky*, 2017 WL 2198158, at *12 (citation omitted).  Class Counsel's costs and disbursements for this case are $1,855.11. *See* Minkoff Decl., ¶ 14.  This includes costs for the filing fee, service, postage, disseminating notice at the conditional certification stage, research, travel, and PACER fees. *See id*.  Named Plaintiffs attach a copy of Class Counsel's Litigation Expenses to the Minkoff Declaration as **Exhibit C**.[6]

### F.    Claims Administrator's Fees and Costs

Rust requests reimbursement for its fees and future costs in the amount of $17,770.00. *See* Mills Decl., ¶ 9.  This is far less than what courts have approved for claims administration costs in similar cases. *Siddiky*, 2017 WL 2198158, at *12 (approving claims administration fess of

---

[6] All of these costs were necessarily incurred in the course of this litigation, and are the types of unreimbursed costs incurred that courts routinely approve in settlements of FLSA and NYLL class action cases. *See, e.g., Febus v. Guardian First Funding Grp., LLC*, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012).

$33,500.00 and noting that "[c]ourts within this district have awarded up to $50,000.00 for the settlement claims administrator"). More information on Rust is supplied in the Mills Declaration.

## IV.    CONCLUSION

Named Plaintiffs have attached a Proposed Order as **Exhibit G** to the Minkoff Declaration. For the reasons stated herein, respectfully, this Court should grant final approval of the settlement, authorize the distribution of settlement checks to the 117 Class Members who are participating in this Settlement, representing their share of the Settlement Fund, approve the requested service awards, attorneys' fees, and expenses, dismiss the case with prejudice, and enter a Final Order. Lastly, the Court should retain jurisdiction over the construction, interpretation, implementation, and enforcement of the Parties' Settlement and distribution of the settlement funds.

Dated:  New York, New York
            September 29, 2020

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiffs*
655 Third Avenue, Suite 1821
New York, New York 10017
Tel. (212) 679-5000
Fax. (212) 670-5005

Michael R. Minkoff (MM4787)
Alexander T. Coleman (AC1717)
Michael J. Borrelli (MB8533)